**People of the State of Illinois, Plaintiff-Appellee, v. Paul De Mario, Defendant-Appellant.**

**Gen. No. 53,005.**

First District, Fourth Division.

June 25, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Haddad, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

In a prior proceeding defendant had been found guilty of robbery and murder and sentenced to terms of 10 to 20 and 15 to 30 years. We affirmed those convictions in an

opinion filed today. People v. De Mario, 112 Ill App2d 175, 251 NE2d 267. Meanwhile, under section 72 of the Civil Practice Act, defendant filed, in the trial court, a petition seeking a new trial. Ill Rev Stats (1967), c 110, § 72. At a hearing on the petition, a witness at the trial, admitting that she had lied under oath to the jury, recanted her earlier testimony which had been damaging to the defendant. Defendant's petition was denied.

POINTS RAISED ON APPEAL
 (1) The court erred in denying a new trial.
 (2) State action deprived defendant of a fair trial.

EVIDENCE
 Sharon Smith Cramer, for defendant
 We will not repeat here the testimony of this witness at the earlier trial, but make reference to our opinion in People v. De Mario, 112 Ill App2d 175, 251 NE2d 267. At the hearing on this petition she declared that all the basic parts of her testimony at the trial had been untrue. She said that she was going to tell the truth at the time but that she was nervous and scared because Officer Mahoney told her she had better not change her story, and he kept giving her "dirty looks" while she was testifying. On cross-examination, she admitted that she had never told anyone that her testimony had been untrue until almost two years after the trial when defense counsel informed her that the case was going to be appealed.

 On further direct examination, she stated that Officer Mahoney, sometime shortly after the incident, had placed her under arrest and this caused her to become upset on account of her baby. Then he drove her and Candy Bergman, another State witness at the trial, to view the scene of the crime, and eventually told her to sign an untrue statement in order to avoid going to jail herself. She was not in the car with defendant that afternoon, and would

have told the truth at his trial but for the presence of Officer Mahoney in the courtroom. On cross-examination, she conceded that her testimony at defendant's trial was the same she had given at the earlier trial of his co-indictee, Guy Ramirez. Officer Mahoney had been present then also.

John Mahoney, for the State

He was assigned as a homicide detective to the case that involved John Baird's death. He remembered questioning Sharon Smith Cramer after Ramirez and defendant had been taken into custody, but he doubted that he told her she was under arrest for murder. Neither Cramer nor Bergman was ever arrested or charged. After driving them to the scene to refresh their memories, he took statements from both of them. At first Cramer said she didn't know anything, but Bergman said to her, "Yes, you do." Then "the story came out." There was no threat of coercion exerted upon the girls either at this point or later at trial. In fact, before this defendant's trial, Cramer had testified to substantially the same evidence at the Ramirez trial. He (Mahoney) was not in the courtroom at that time, there having been a rule excluding witnesses. He testified at the Ramirez trial but not at this defendant's trial.

On cross-examination, he testified that he may have told Cramer the date when the crime was supposed to have occurred, and it was possible that he said to Bergman and Cramer, "You girls were there, weren't you?" but he didn't remember it.

Robert Cody, for the State

He is a detective who worked with Detective Mahoney on this case and was present when Sharon Cramer was first picked up for questioning. Her name had been given to them by Candace Bergman. He didn't hear Mahoney, nor did he, himself, make any threats or coerce either of the girls in any way at any time.

Kenneth L. Gillis, for the State

An Assistant State's Attorney in October, 1965, he had occasion to talk with Sharon Smith just before the Ramirez trial concerning the facts of the case. Her recollection corresponded to the facts as they were recorded in the file, and she supplied some details which were not in the file. He talked to her again shortly before defendant's trial. She did not show any hesitancy or apparent nervousness; during the trial she seemed to testify truthfully and was no more nervous than any witness. Her testimony was lucid and clear and not hesitant. She did not complain of any police mistreatment. After the trial she phoned him for legal suggestions as to the custody of her baby. At no time did she tell him or indicate in any way that she had testified falsely. Detective Mahoney was present at the counsel table during defendant's trial but did not testify. Sharon Cramer's memory concerning occurrences on the day of the crime was lucid, although he recalled that there had been some partial impeachment of her testimony concerning details of the circumstances under which her statement at the police station had been made.

OPINION

 (1) The defendant alleges that the court erred in denying a new trial under section 72. In order for a judgment to be disturbed on the basis of perjured testimony, it "must be shown by clear, convincing and satisfactory evidence to have been, not false merely, but to have been wilfully and purposely falsely given, and to have been material to the issue tried and not merely cumulative but probably to have controlled the result." People v. Lewis, 22 Ill2d 68, at 71, 174 NE2d 197. After the hearing on defendant's petition, the trial judge, who was the same one who presided over defendant's jury trial, stated that he believed that Sharon Cramer had

lied in her recantation after telling the truth at the trial, and that he believed the testimony of the police officers. As in other proceedings, the credibility of the witnesses at a section 72 hearing is a matter primarily for the trial court, and we find in this record no basis for disturbing its conclusion. On that ground, therefore, the attempted proof of wilful falsity fails to meet the requirement of People v. Lewis, supra. The mere recantation of prior testimony is not even sufficient proof in itself to establish that the earlier testimony was perjured. Cobb v. United States, 161 F2d 814.

Secondly, we find that Sharon Cramer's testimony at the trial was not so material as to create the probability that it controlled the result. We think, rather, that it was merely cumulative of Candace Bergman's testimony and was not needed to establish defendant's guilt beyond a reasonable doubt. In addition, there was much other corroborative evidence to support the Bergman evidence.

■■ (2) Defendant also contends that State action deprived him of a fair trial. He bases this claim on allegations of "pressure" by police detectives and failure to disclose to the defense that, during his interrogation of Sharon Cramer, Officer Mahoney had informed the witness of the dates of the incident. Defendant relies chiefly upon Barbee v. Warden, 331 F2d 842, 846. That case involved the withholding by the police of important exculpatory evidence, and is easily distinguishable from the case before us. We do not believe that the testimony, which we have summarized above, established the existence of the kind of police "pressure" which defendant asserts will require the granting of a new trial. Police detention and questioning of witnesses, when properly performed, as in this case, are justifiable and reasonable techniques of criminal investigation and "indispensable in law enforcement." People v. Hall, 413 Ill 615, 624, 110

NE2d 249. Furthermore, all of the facts which defendant argues in this regard were presented to the jury, by stipulation or otherwise, in the original trial.

DECISION

The judgment of the Circuit Court denying defendant's petition for a new trial is affirmed.

Affirmed.

DRUCKER, P. J. and McNAMARA, J., concur.