THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEO WALKER, Defendant-Appellant.

(No. 60090;

First District (3rd Division)—March 6, 1975.

Paul Bradley and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Mary Ellen Dienes, and John Theis, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

Defendant, Leo Walker, was convicted after a bench trial by the circuit court of Cook County of the offenses of attempt murder and aggravated battery (Ill. Rev. Stat. 1971, ch. 38, pars. 8–4, 12—4), and sentenced to a term of 5 to 15 years on the charge of attempt murder. Defendant appeals from these convictions, arguing: (1) that the evidence was insufficient to establish his guilt beyond a reasonable doubt, (2) that his conviction for aggravated battery should be reversed since it was based upon the same conduct as the conviction for attempt murder, and (3) that his sentence is excessive and should be reduced.

We affirm the conviction of attempt murder and vacate the conviction for aggravated battery.

The evidence presented at trial showed the following. On the evening of Valentine's Day, February 14, 1972, Henderson Arnold was a uniformed, on-duty Chicago police officer assigned to keep the peace at the Presentation Community Center, 3906 Lexington, Chicago. A dance was being held that evening in the basement for the members, and Officer Arnold repeatedly announced to the gathering that anyone who did not have a membership card would have to leave the premises. An altercation ensued between Officer Arnold and one person who refused to leave the dance, Fred Gage. During the altercation a gun was dis-

charged, which caused a bullet to enter the right side of Officer Arnold's head at the hairline and exit through his left cheek.

Officer Arnold testified at trial that while he was about to place Gage under arrest, he observed the defendant, Leo Walker standing 2 or 3 feet to his right, point a gun at him and fire. Another eyewitness, Albert Callahan, one of the persons who attended the dance, testified that he saw Leo Walker pull a gun and shoot Officer Arnold in the neck.

After the shot was fired, Gage and another individual grabbed the policeman and began to strike him, but Arnold broke away and reached for his service revolver, which was missing. He ran and was fired upon by his assailants, but returned the fire with a second pistol he carried. Arnold testified that at this time he was wounded by bullets which struck his left foot and left arm; the bullet which struck his left foot was fired by the defendant. Officer Arnold made his way to the church rectory where the police were called. The responding police officers were given the names and descriptions of the offenders by Officer Arnold, who knew Leo Walker by name, having seen him in the area prior to the incident. The victim was then taken to the Illinois Research Hospital where an operation was performed on his neck and his wounds were treated.

A couple of hours after the shooting, between 10 and 11 P.M., Chicago police officers David O'Callahan and David Brannigan went to the defendant's home with a description of defendant and the other suspects, and spoke with defendant's sister and mother at the doorway of the apartment. As the officers were speaking with Mrs. Walker, Officer O'Callahan noticed a man later identified as Leo Walker sitting on a couch and fidgeting with something under his seat. The policeman asked the man to stop playing around and two live rounds of ammunition fell to the floor. When the man on the couch was asked his name, he said he was Jerry Walker and then got up, revealing about 10 more rounds of ammunition. Officer O'Callahan recovered the shells and went to speak with Mrs. Walker. During the course of this discussion, a disturbance arose in the dining room and the officers went to see what was happening. When they returned to the living room, the man on the couch had departed, leaving behind his coat. The officers picked up the coat and discovered a .22-caliber derringer in the pocket. Two other guns in plain view were also recovered from the apartment at that time. Both officers then left the apartment and proceeded to the 11th District Police Station.

The officers returned to defendant's apartment at approximately 11:45 P.M. and looked around, having obtained the permission of defendant's mother. They looked inside the television set in the dining room and noticed two revolvers hidden in the back of the set. One of

the revolvers was subsequently identified as Officer Arnold's service revolver, and a Chicago police fingerprint technician testified at trial that the defendant's fingerprints were found to be on the policeman's revolver. While the officers were waiting in the apartment for the evidence technicians of the Chicago Police Department mobile crime laboratory to arrive on the scene, the doorbell rang and Officer O'Callahan answered the door to see Leo Walker at the bottom of the stairwell. Upon seeing the uniformed policeman, the defendant ran away. The officer gave chase repeatedly ordering Walker to halt, and firing two warning shots. Officer O'Callahan subsequently apprehended Walker after a scuffle and placed him under arrest.

The defendant testified on his own behalf that he was at the dance, that he had a membership card to the Center, and that he was in the basement at the bottom of the staircase when he heard shots upstairs. Thereafter, he left the area along with most of the people present, and went to a friend's house for about an hour. Then, he went to another friend's house, where he remained until about 10:20 P.M. Returning home less than a half-hour later, defendant testified that as he was proceeding up the stairs to his third-floor apartment he heard a voice he recognized screaming a message to him, and thereupon he turned around and ran. The arrest occurred shortly thereafter. Leo Walker stated that he had not seen Officer Arnold prior to the date of the shooting, that he did not know how the guns got into the television set in his apartment, and that he did not shoot Officer Arnold. He explained the presence of his fingerprints on Officer Arnold's service revolver by stating that his brother handed the pistol to him outside the church, but that he returned the pistol to his brother at that time.

■■ Defendant's first contention on appeal is that the evidence was insufficient to establish his guilt beyond a reasonable doubt. Defendant argues that the State's eyewitness testimony was not worthy of belief and that the circumstantial evidence introduced by the State was not probative of his guilt. The rule is well established that in a bench trial, the credibility of witnesses and the weight to be given to their testimony are questions for the trier of fact to determine. That determination will not be reversed on appeal unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendant's guilt. (*People v. Clark* (1972), 52 Ill.2d 374, 288 N.E.2d 363.) An identification by one witness, if positive and credible, is sufficient to sustain a conviction even though contradicted by the accused. *People v. Bennett* (1973), 9 Ill.App.3d 1021, 293 N.E.2d 687.

In the case at bar, defendant was positively identified as the perpetrator of the crime by both Chicago Police Officer Arnold and Albert

Callahan. Defendant now urges that Officer Arnold's testimony was neither credible nor worthy of belief based upon the fact that the bullet wound to Arnold's neck entered from the right side at the hairline toward the back. Defendant urges that this necessarily indicates that defendant would have been standing behind Arnold when he was shot and that Arnold could not have seen who shot him. At trial, Arnold testified that there was a group of people standing outside the Center and that he had observed the defendant standing parallel to him, 2 to 3 feet away when defendant fired. The bullet entered the right side of Arnold's neck at the hairline and exited through his left cheek. The State argued that the slightest movement by Arnold could have caused the bullet to enter the back of Arnold's neck and we find that the location of the physical wound was not inconsistent with Arnold's trial testimony. Defendant also argues that the description given by Arnold was contradictory, did not mention that defendant was wearing a large hat, and was inaccurate as to the clothing defendant was wearing. At the time other police officers arrived on the scene, Arnold had been shot three times. Under these circumstances, Arnold's failure to give an exact description was understandable. Precise accuracy in describing a defendant is unnecessary where an identification is positive. *People v. Miller* (1964), 30 Ill.2d 110, 195 N.E.2d 694.

■■ At trial, Arnold testified that he knew the defendant by name prior to the incident in question. During the incident he had an adequate opportunity to view the defendant so as to fix Walker's identity. In addition, two Chicago police officers testified that after their arrival on the scene they immediately went to the defendant's home. When the police officers arrived at defendant's home, the defendant was present and the officers recovered bullets from where defendant had been seated. Defendant then gave a false name to the officers. Subsequently, while the officers were investigating a disturbance in another part of the apartment, the defendant fled. A search of defendant's coat revealed a derringer in the pocket. When the defendant returned to the apartment, he observed the officers and ran, with the officers in pursuit. Defendant was arrested only after a chase and scuffle. While defendant points to certain contradictions in the testimony between Arnold and Callahan, these are matters of credibility for the trier of fact to determine. (*People v. Reese* (1973), 54 Ill.2d 51, 294 N.E.2d 288.) In addition, the identification of defendant by Officer Arnold and Albert Callahan was further corroborated by the fact that Officer Arnold's service revolver, which was taken in the shooting, was subsequently found hidden in the back of a television set in defendant's home and defendant's fingerprints were found to be on the weapon. After a complete review of the entire record,

we conclude that the evidence adduced at trial was sufficient to establish defendant's guilt beyond a reasonable doubt.

Defendant's second contention on appeal is that the trial court improperly found him guilty of both attempt murder and aggravated battery, since both charges arose out of the same course of conduct. A review of the record demonstrates that defendant's actions which resulted in his conviction for attempt murder were the same actions which resulted in his conviction for aggravated battery, *i.e.*, the shooting of Officer Arnold. The trial judge recognized this fact when he sentenced the defendant only on the charge of attempt murder. Even though no sentence was imposed on the charge of aggravated battery, defendant's conviction on this charge was improper. (*People v. Lilly* (1974), 56 Ill.2d 493, 309 N.E.2d 1.) Accordingly, the defendant's conviction for aggravated battery must be vacated.

■■ Defendant's final contention on appeal is that his sentence is excessive and should be reduced. While this court has the power to reduce sentences (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(4)), that power should be exercised with care and only where it is manifest in the record that the sentence is excessive. (*People v. Fox* (1971), 48 Ill.2d 239, 269 N.E.2d 720.) The trial judge who heard the testimony at trial and the matters presented at the hearing in aggravation and mitigation is normally in a better position than a reviewing court to determine the punishment to be imposed. *People v. Fox.*

■■ In the case at bar, defendant was sentenced to a term of 5 to 15 years on the charge of attempt murder, which provided for a term of 1 to 20 years. We carefully note the trial court's remarks upon imposing sentence:

> "The Court must take into consideration not only the nature of the offense in question, but also the character of the history of the defendant and I feel that something indeed less than the maximum probably would be warranted in this case."

The facts demonstrate that Leo Walker shot a uniformed Chicago police officer in the neck from a distance of 2 to 3 feet. As the officer attempted to run from the scene, Leo Walker fired upon him again, inflicting another wound. In light of these facts, we conclude that the sentence imposed by the trial court was not excessive.

For the above mentioned reasons, judgment of the circuit court of Cook County as to the conviction on the charge of attempt murder is affirmed; judgment as to the conviction for the offense of aggravated battery is vacated.

Affirmed in part; vacated in part.

McNAMARA and MEJDA, JJ., concur.