THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHNNY SMITH *et al.*, Defendants-Appellants.

First District (4th Division)   No. 62980

Opinion filed April 20, 1978.

Theodore M. Becker, of Becker & Tenenbaum, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Linda Ann Miller, and Gary W. Adair, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Following a jury trial, defendants Johnny Smith and Hardy Lewis were each convicted of two counts of murder (Ill. Rev. Stat. 1973, ch. 38, par. 9—1), one count of attempt murder (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4 and 9—1), three counts of attempt armed robbery (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4 and 18—2), and one count of aggravated battery (Ill. Rev. Stat. 1973, ch. 38, par. 12—4). Both defendants were sentenced to terms of 100 to 200 years for each murder count; terms of 10 to 100 years for attempt murder; and terms of 6 years, 8 months to 20 years for each count of attempt armed robbery, all sentences to run concurrently. The defendants were not sentenced on the aggravated battery count.

On appeals consolidated for review, defendants raise eight issues for

our consideration: (1) whether there is sufficient evidence to sustain the convictions; (2) whether the State improperly used police testimony to bolster the identification made by the eyewitness; (3) whether the tendering of an admissions instruction was improper; (4) whether the State introduced improper rebuttal testimony; (5) whether the trial court erred in denying defendants' motion for a new trial; (6) whether the introduction of pictures of the murder scene was error; (7) whether defendants were improperly convicted of both attempt murder and aggravated battery; and (8) whether the sentences are excessive.

We affirm defendants' convictions and sentences for murder, attempt murder and attempt armed robbery but vacate the defendants' aggravated battery convictions.

A review of the evidence establishes that shortly before noon on April 20, 1974, Henry Johnson and Joseph Garrett were shot and killed and Delois Johnson was shot and injured in the Johnson apartment located at 1742 West 77th Street in Chicago, Illinois.

At trial, the State's principle witness, Delois Johnson, gave this eyewitness account of the incident. At approximately 11:40 a.m., on the morning of April 20, 1974, Delois Johnson returned from an errand to the apartment where she lived with her husband, Henry Johnson, and her daughter. Just as she reached her second floor apartment she heard the front hallway buzzer. She called down and asked who it was. A voice answered, "Joe." Delois Johnson then informed her husband, Henry, who was inside the apartment, that it was a person whom she recognized as Joseph Garrett at the door. Henry told her to buzz Garrett in. Garrett entered the apartment followed by two men whom she had never seen before but subsequently identified as defendants, Smith and Lewis.

After entering the apartment the defendants, to Garrett's apparent surprise, produced handguns and ordered Garrett, Delois and Henry Johnson to lie on the couches. Lewis asked Henry Johnson where the money was and began searching the apartment while Smith held a gun on the others. Lewis again asked for money but Henry Johnson reiterated that he had none.

Grabbing an electric iron and extension cord Lewis ordered Garrett and the Johnsons into the bathroom. They were told to place their faces and hands into the half-filled tub. Lewis wrapped the extension cord around their bodies and told them he was going to electrocute them. Lewis then threw the iron into the bathtub and a shot went off, hitting Henry Johnson. A second shot struck Delois Johnson in the back of the head and a third hit Garrett, killing him.

Delois Johnson, who had not been killed, feigned death. She heard Smith yell at Lewis, "What you doing man, what you doing." Before the defendants left the apartment a fourth shot was fired into the shoulder

of Delois Johnson, who then blacked out. The defendants had been in the apartment about 20 minutes. Delois Johnson testified that during that time the defendants did not attempt to conceal their identities.

Upon regaining consciousness Delois Johnson called her mother, whom she told to call the police. In response to this call her brother-in-law, Cedell Johnson, and his wife arrived at the apartment. Approximately five minutes later police officer Baker arrived at the scene. Officers Meany and Sherwood arrived and transported Delois Johnson to the hospital.

Officer Meany testified that enroute to the hospital, Delois Johnson gave the following general description of the assailants: "two unknown, male black men, one about 5'11", medium build, 20 to 25 years old, wearing a black leather three-quarter length coat and green tam; the other about 5'10" to 5'11", wearing dark prescription glasses, a short natural haircut and a blue peacoat." Meany also stated that Delois Johnson told him that she had met Garrett and the other two men as they arrived at the apartment building and had walked up the stairs with them.

From her hospital bed, Delois Johnson identified Hardy Lewis from a picture in a Tilden High School yearbook. The next day she picked both defendants' pictures from a group of police photographs. On May 21, 1974, after being released from the hospital, she picked Lewis and Smith out of two separate five-man police lineups.

On cross-examination Delois Johnson admitted that her husband was a user and seller of heroin. She again stated that she had never seen the defendants before that day. She denied walking upstairs to her apartment with a different man about the time of the incident and denied that any men had visited her apartment that day prior to the defendants and Garrett. She also testified that at the time she was shown the Tilden High School yearbook she was unaware that Jenny Smith had previously identified Lewis from his picture in the yearbook.

On redirect, Mrs. Johnson testified that she looked through many pages of the yearbook before choosing a picture of Lewis and that the police had not started her on the page containing his picture. At trial there was a tear on the page near Lewis's picture but Mrs. Johnson stated she did not know whether it had been there when she first identified the picture and that it had not influenced her identification. She further asserted that her identification of the defendants from police photographs and in the lineups had been made without suggestive comment from the police.

Jenny Smith, who is not related to defendant Smith but is a cousin of defendant Lewis, testified that she lived with Joseph Garrett and her three children; that at 11:10 a.m., on the morning of April 20, 1974, her cousin Hardy Lewis and another man came to her apartment to see Garrett; that, although she was in the bathroom, she heard the men talking in the dining

room; that she later saw the defendants and exchanged greetings with them; and that Garrett told her he was going with Lewis and Johnny Smith, to Henry Johnson's apartment. She stated that she was positive that the three men left at 11:15 a.m., because she looked at the clock.

Later that afternoon she was called at work and informed of Garrett's death. Around 10:30 p.m. that evening she accompanied police officers to Tilden High School, where she identified a picture of defendant Lewis after examining three yearbooks. She identified both defendants at trial as the men who had visited her apartment that morning.

On cross-examination Jenny Smith admitted that she was not married to Garrett and stated that he did not use heroin. She affirmed her previous testimony concerning the exact time of the defendants' visit to her apartment. She stated that on that day Lewis had been wearing a three-quarter length brown leather coat with fur on the sleeves and collar and a dark tam, and that Smith wore glasses and a dark jacket, perhaps a green army jacket. This statement matches the defendants' description of their attire on the day in question.

Police investigator Peter Dignan testified that he and his partner accompanied Jenny Smith to Tilden High School and secured the yearbook from which she identified Lewis. He later showed the yearbook to Delois Johnson who selected Lewis's picture. The next day Delois Johnson "positively identified" the defendants from 10 police department color photographs.

Officer Grunhard described his follow-up investigation of the Johnson apartment. He observed that the victims' pockets had been turned inside out; that the apartment had been ransacked; and that strewn on the living room floor were several brown bags containing residue of what appeared to be marijuana. He also found an unfired revolver and registration in the name of Delois Johnson.

The following day, after receiving a call from defendant Lewis, Grunhard testified that he went to Lewis's home where Lewis and Smith were waiting. Lewis asked why he was being investigated and Grunhard told them about the murders. Grunhard noticed that Smith, who stated he had been with Lewis the previous day, fit the description of the second man. After reading the defendants their rights, both accompanied Grunhard to the police station and voluntarily gave statements to the police.

Officer Baker and Cedell Johnson, the brother of Henry Johnson, testified that they observed that the Johnson apartment had been ransacked; that Garrett and Johnson were bound; that electrical wires and an iron were hanging from the bathtub; and that the victims' pockets were pulled inside out. Baker testified that he saw large brown bags and a box

of small envelopes torn in pieces in the living room, but Cedell Johnson said that he had not seen any brown bags and denied that his brother used or sold heroin or marijuana.

It was stipulated that an autopsy disclosed 4.5 milligrams of morphine in the bile of Joseph Garrett and 1 milligram of morphine and 108 milligrams of quinine in the bile of Henry Johnson.

The defendants presented an alibi defense which substantially followed the statements which they had given to the police. Defendants and Veronica Anthony, Lewis's girlfriend, acknowledged that they had read each others statements before testifying at trial.

Ms. Anthony, Smith and Lewis each testified that on Saturday, April 20, 1974, Ms. Anthony and Lewis picked up Smith at his home at 9 a.m. They went together to a Shell Gas Station to have Ms. Anthony's car serviced. While the car was being serviced Ms. Anthony called her mother and was instructed to be home by noon. They left the gas station about 10:30 a.m.

The three then drove to a garage where Smith's car was being repaired. After finding that the garage was closed, they continued on to the home of Jenny Smith near 43rd and Shields. They all testified that they arrived at Jenny Smith's home about 10:40 or 10:50 a.m. Ms. Anthony waited in the car while Lewis and Smith went in. After five or 10 minutes Lewis and Smith returned to the car with Garrett, a friend of Lewis whom Ms. Anthony had never seen before. She estimated that the time was then before 11 a.m.; Lewis testified that the time was approximately 11 a.m.

Ms. Anthony, Lewis, Smith and Garrett then drove for about ten minutes before arriving at the Johnson apartment on 77th Street. Lewis testified that they arrived at 11 or 11:05 a.m. Ms. Anthony remained in the car while the three men went into the apartment building.

Lewis testified that he picked up Garrett because he needed him to find the residence of Henry Johnson. He stated that he went to the Johnson apartment to collect $10 which he had loaned to Johnson a few nights before in a bar. Both Lewis and Smith remembered Johnson from their high school days. The defendants testified that Johnson's wife was not present and that Johnson was alive when they left the apartment.

Ms. Anthony estimated that less than five minutes passed before the defendants returned to the car. Lewis stated that they were in the Johnson apartment for about 10 minutes. Ms. Anthony, Lewis and Smith testified that Garrett accompanied the defendants back to the car but then went back to the Johnson apartment. In his original statement, Smith had stated that Garrett stayed in the Johnson apartment.

Ms. Anthony asserted that she saw three men approaching the building as she, Lewis and Smith left. Lewis also saw three men, but stated that they had entered the building. Smith told the police that he saw three men coming up the stairs as he left the Johnson apartment.

Ms. Anthony testified that she left the defendants at Smith's house and then went to her own home on the same block arriving at 11:30 a.m. Her aunt, Minnie Henderson, and her mother, Frankie Anthony, both testified that she arrived home before noon.

According to Lewis, the defendants drove to Ms. Anthony's house and from there walked to Smith's house and then to Lewis's home. Lewis stated that he saw Alberta Gray looking out her window and waved to her. Mrs. Gray corroborated Lewis's statement; however, she was confused about the date and insisted that Lewis was alone at the time.

Smith testified that he had stopped to carry some shopping bags for a neighbor, Rosie Boyd, at about 11:05 a.m. Mrs. Boyd corroborated this statement. Lewis and Smith agreed that they spent the remainder of the afternoon together.

The defense also presented the testimony of 10-year-old Ronald Polk, a neighbor of the Johnson's. He testified that on the morning of the incident he had seen Delois Johnson leave her apartment accompanied by a man, other than either defendant, whom he had seen on another occasion with a different woman. Ronald's mother, Winifred Polk, testified that she heard gun shots between 11:55 a.m. and noon. The defense also presented several character witnesses for the defendants.

In rebuttal for the prosecution, Jenny Smith testified that three days before the murders, she was at a bar with Hardy Lewis and several others for a birthday party celebration. Henry Johnson was present and purchased drinks for Jenny Smith's party. Ms. Smith stated that Johnson had a great deal of money and that Lewis asked her who Lewis was and if he always carried that much money. Lewis also asked what kind of car Johnson drove. Ms. Smith stated that she was with defendant Lewis the entire evening and at no time did she observe Johnson borrow money from him.

The jury returned verdicts of guilty on all counts. Prior to sentencing, an evidentiary hearing was held on defendants' motion for a new trial. In support of the motion, defendants offered testimony indicating that Jenny Smith had signed a note recanting her rebuttal testimony. Annie Lewis, Cherry Lewis and Brad Lewis, mother, sister and brother of defendant Lewis, testified that Jenny Smith told them that she had been threatened during the trial and that her rebuttal testimony was false.

Jenny Smith denied that she was recanting her rebuttal testimony and said that she signed the note only to stop defendant Lewis's family from harassing her. She also stated that Annie Smith promised to give her enough money to buy a house if she would write the note.

Annie Ruth Smith and Kathy Smith, sisters of Jenny Smith, corroborated their sister's rebuttal testimony regarding the occurrences at the bar three days before the murders.

The trial judge thereupon denied the defendants' post-trial motion and proceeded to impose sentences.

OPINION

I

Defendants initially contend that the evidence was insufficient to support their convictions in that it rested entirely upon identifications which were doubtful, vague and uncertain. The defendants point to several discrepancies between Delois Johnson's description of the assailants and the defendants' testimony of their appearance on the day of the murders and, also, to the fact that the identifying witness had not referred to any distinguishing facial characteristics of the assailants.

Delois Johnson told the police officers transporting her to the hospital that one of the men was wearing a black leather coat and a green tam; the other, a blue pea coat, dark glasses and he had a short natural haircut. At trial she stated that she could not recall what she told the police on that day but believed that one man was wearing a green leather coat and green tam. At trial, Jenny Smith, Veronica Anthony and the defendants testified that Lewis was wearing a brown leather coat with fur trim and a black tam, and Smith, who had a short natural haircut and a moustache, wore a green army jacket and dark glasses. Thus defendants argue that Delois Johnson's identification must be doubted. We disagree.

During the 20 minutes which the assailants were in the Johnson apartment, Delois Johnson had ample opportunity to view them. She watched them walk up the stairs with Joseph Garrett and enter the apartment. She watched as they ransacked the apartment and as defendant Lewis led the victims to the bathroom. On the way to the hospital, Delois Johnson managed to give a description of the attackers which fit the defendants in many respects. Later that night she identified Lewis from a picture in the Tilden High School yearbook. The next day she was shown 10 photographs from which she chose both defendants. One month later she identified the defendants in two five-man lineups and again, without error, identified the defendants at trial.

■■■ Where a witness's identification is positive and precise, accuracy in describing facial characteristics or attire is unnecessary. (*People v. Jackson* (1974), 23 Ill. App. 3d 945, 320 N.E.2d 591.) The failure to detect the presence or absence of a moustache, or to describe attire with complete accuracy are minor discrepancies and do not destroy the credibility of the witness. (*People v. Carroll* (1973), 12 Ill. App. 3d 869, 299 N.E.2d 134, *cert. denied*, 417 U.S. 972, 41 L. Ed. 2d 1144, 94 S. Ct. 3180 (1974); *People v. Marbley* (1975), 34 Ill. App. 3d 434, 340 N.E.2d 247.) The discrepancies between Delois Johnson's initial description of

the defendants and her trial testimony is not of a nature so substantial as to create a reasonable doubt of defendants' guilt. See *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364.

■■ Defendants also suggest that the photograph identifications made by Delois Johnson were unreliable. Although the name Johnny Smith appeared on the back of his photograph and the page on which Lewis's picture appeared in the yearbook was torn, this does not render the identifications uncredible, where the witness stated that she did not notice either of these markings while making her identifications.

■■ Defendants further point to the testimony of Ronald Polk and of defendants' alibi witnesses in alleging the State's failure to meet its burden of proof. They cite several cases holding that plausible evidence of an alibi cannot be disregarded where the only evidence contradicting it rests upon the identity of the defendant as the perpetrator of the crime charged, and where the entire record reveals reasonable doubt of guilt because of an uncertain identification. See *People v. Hister* (1975), 60 Ill. 2d 567, 328 N.E.2d 531; *People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232; *People v. McGee* (1961), 21 Ill. 2d 440, 173 N.E.2d 434.

This is an accurate statement of the law, however, it is inapplicable to the present facts. Here the identifications were positive and repeatedly made without error or contradiction. The identification testimony of a single witness, even if it be that of a crime victim, is sufficient to convict if, as here, the identification is positive and the witness is credible. *People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239.

■■ Based on the record before us we cannot say that the evidence presented was so unsatisfactory as to·leave a reasonable doubt as to the defendants' guilt. It is the province of the jury to weigh and balance the identification testimony against the alibi presented by the defense. A determination of guilt by a jury will not be set aside by a reviewing court unless it is palpably contrary to the weight of the evidence or so unsatisfactory as to cause a reasonable doubt of guilt. *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.

## II

The defendants next contend that the testimony of investigator Dignan was inadmissible hearsay, improperly used to bolster an otherwise weak identification by Delois Johnson. No objection was made at trial or in defendants' post-trial motion, but the defendants now urge that the admission of this hearsay evidence constitutes plain error. Ill. Rev. Stat. 1973, ch. 110A, par. 615(a); *People v. Wright* (1965), 65 Ill. App. 2d 23, 212 N.E.2d 126.

■■ A review of authority on this point indicates that the admission of hearsay identification testimony constitutes reversible error only when

used as a substitute for in-court identification or when introduced to strengthen and corroborate a weak identification. If the hearsay testimony is merely cumulative (*People v. Daliege* (1976), 40 Ill. App. 3d 706, 352 N.E.2d 247; *People v. Smith* (1969), 105 Ill. App. 2d 8, 245 N.E.2d 23; *People v. James* (1969), 109 Ill. App. 2d 328, 248 N.E.2d 777; *People v. Lowe* (1969), 112 Ill. App. 2d 399, 251 N.E.2d 329), or is supported by a positive identification and other corroborative circumstances (*People v. Canale* (1972), 52 Ill. 2d 107, 285 N.E.2d 133), it constitutes harmless error (*People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364). It has further been held that if the person who made the out-of-court identification is present, testifies to his prior identification and is subject to cross-examination, the purpose of the hearsay rule is satisfied. *People v. Saffold* (1977), 47 Ill. App. 3d 934, 365 N.E.2d 524.

■■ In the present case, the identification of the defendants by Delois Johnson was positive and unhesitating. She testified that she identified Lewis from the Tilden High School yearbook; the following day she identified both defendants from 10 color photographs, and later in two five-man lineups. Investigator Dignan's characterization of the identifications as "positive" was merely cumulative. Moreover, Delois Johnson had testified in court regarding the identifications and had been subject to cross-examination by the defendants. We conclude that the trial court's admission of the police officer's testimony regarding the yearbook and photograph identifications of the defendants was not error.

### III

It is also argued that the trial court committed reversible error in tendering to the jury the following instruction in the form of Illinois Pattern Jury Instructions, Criminal, No. 3.06:

> "You have before you evidence that the defendant[s] made admissions of facts relating to the crime charged in the indictment.
>
> It is for you to determine what weight should be given to the admissions. In determining the weight to be given to an admission, you should consider all of the circumstances under which it is made."

We believe that this issue merits discussion despite defendants' failure to properly preserve an objection.

An admission has been characterized as "a statement by an accused of fact or facts which, when taken in connection with proof of other facts, may lead to an inference of guilt of the crime charged, but from which guilt does not necessarily follow." (*People v. Kurzydlo* (1974), 23 Ill. App. 3d 791, 795, 320 N.E.2d 80, 84.) An instruction on admissions is appropriate if there is sufficient evidence in the record to support it.

■■ Defendants made statements to the police and testified at trial that

they went with Joseph Garrett to the Johnson apartment and were in the apartment moments before the crimes were committed. Although these statements could be construed as exculpatory, a negative inference tending to establish guilt can likewise be drawn. (See *People v. Sowell* (1965), 56 Ill. App. 2d 110, 205 N.E.2d 487.) Thus, as the admission instruction admonishes, it was for the jury to determine the weight to be given these statements. It was not improperly suggested to the jury that the defendants' statements were admissions of guilt, nor does it appear that the instruction would tend to mislead the jury in its evaluation of the evidence. For these reasons, the admissions instruction was appropriately tendered to the jury.

## IV

The defendants further allege that the trial court erred in allowing Jenny Smith to testify in rebuttal to the direct testimony given by defendants. Defendants testified that they had gone to the apartment of Henry Johnson on the morning of the crimes to collect $10 which Johnson had allegedly borrowed from Lewis three nights before in a bar. In rebuttal, Jenny Smith testified that three nights before the incident, she had been in a bar with Lewis and Johnson; that Johnson was carrying a great deal of money; that Lewis asked about Johnson and his money with apparent interest; and that, although she was with Lewis the entire evening, she did not observe Johnson borrow any money from him. No objection was made to this rebuttal testimony.

■■■ Testimony that would be proper as evidence-in-chief should not be reserved for rebuttal; however, it is within the discretion of the trial judge to allow a rebuttal witness to testify and such rulings will not ordinarily be set aside on review. (*People v. Shannon* (1968), 94 Ill. App. 2d 110, 236 N.E.2d 369; *People v. Schwartz* (1975), 34 Ill. App. 3d 1043, 340 N.E.2d 583.) The failure of the defendants to object to the presentation of rebuttal testimony precludes them from alleging an abuse of discretion on appeal. *People v. Miller* (1964), 30 Ill. 2d 110, 195 N.E.2d 694.

## V

On a motion for new trial defendants presented evidence purporting to show that the rebuttal testimony of Jenny Smith was false. Defendants now contend that the trial court's denial of their motion for new trial, based on this evidence, was error.

To merit a new trial, the new evidence must be of such conclusive character that it will probably change the outcome on retrial. The new evidence must be material to the issue and not merely cumulative, and must have been discovered since the trial and be of such character that it

could not have been discovered prior to trial by the exercise of due diligence. (*People v. Allen* (1976), 35 Ill. App. 3d 342, 341 N.E.2d 431; *People v. Baker* (1959), 16 Ill. 2d 364, 158 N.E.2d 1.) Applications for new trials based upon newly discovered evidence must be cautiously considered (*People v. Holtzman* (1953), 1 Ill. 2d 562, 116 N.E.2d 338), especially when the new evidence involves a confession of perjury (*People v. Marquis* (1931), 344 Ill. 261, 176 N.E. 314).

■■ The burden is upon the movant to rebut the presumption that the verdict is correct and that there has been no lack of diligence. The matter is directed to the sound discretion of the trial court and will not be disturbed unless a manifest abuse of discretion can be shown. *People v. Holtzman* (1953), 1 Ill. 2d 562, 116 N.E.2d 338.

At the hearing on the motion for a new trial, defendants produced a note signed by Jenny Smith stating that her rebuttal testimony regarding the encounter in the bar three days before the murders was false. Several witnesses, all relatives of the defendants, testified that Jenny Smith told them that she had lied in her rebuttal testimony.

Jenny Smith testified that her trial testimony had been truthful and that she had signed the note only after the defendants' relatives promised her a new home and threatened her with possible bodily harm.

Two of Jenny Smith's sisters testified that they had been present at the bar three days prior to the crimes and corroborated Ms. Smith's rebuttal testimony. They also substantiated Jenny Smith's testimony that she had been threatened and signed the note recanting her prior testimony only to keep the defendants' families from harassing her.

Evidence that a witness has recanted earlier trial testimony is particularly unreliable due to the fraud and imposition which defeated parties, as a last resort, may attempt to practice. In *People v. Nash* (1966), 36 Ill. 2d 275, 222 N.E.2d 473, *cert. denied* (1967), 389 U.S. 906, 19 L. Ed. 2d 223, 88 S. Ct. 222, our supreme court rejected defendant's argument that a new trial should have been granted him after a key prosecution witness executed an affidavit stating that his trial testimony was false. Citing *People v. Marquis* (1931), 344 Ill. 261, 265, 176 N.E. 314, 315, the court in *Nash* declared:

> "Recantation by a witness of his testimony on a trial does not necessarily entitle a defendant to a new trial. Recanting testimony is regarded as very unreliable, and a court will usually deny a new trial based on that ground where it is not satisfied that such testimony is true."

(36 Ill. 2d 275, 285, 222 N.E.2d 473, 478.) See also *People v. De Mario* (1969), 112 Ill. App. 2d 420, 251 N.E.2d 274, *cert. denied* (1970), 397 U.S. 1057, 25 L. Ed. 2d 675, 90 S. Ct. 1404.

■■ In this case, Jenny Smith denied at the hearing that she had

perjured herself at trial. Moreover, the State produced evidence consistent with her rebuttal testimony. We are of the opinion that the trial court was justified in finding that Jenny Smith's trial testimony was truthful and that the note recanting this testimony was false.

## VI

■■ The defendants also complain that the trial court should not have allowed the State to show two photographs of the murder scene to prosecution witnesses because of a potential prejudicial impact on the jury. Since there is no evidence in the record that these photographs were shown to the jury there is no possibility that the jury could have been influenced by them. Additionally, the defendants never objected at trial or in their written post-trial motion to the State's use of the photographs and, thus, this issue is waived for purposes of appeal.

## VII

■■ Defendants further contend that the trial court improperly found them guilty of both attempt murder and aggravated battery, since the charges arose out of the same course of conduct. Defendants' actions which resulted in their convictions for attempt murder were the same actions which resulted in their convictions for aggravated battery, *i.e.*, the shooting of Delois Johnson. The trial judge recognized this fact when he did not sentence the defendants on the aggravated battery charge. Even though no sentence was imposed on the charge of aggravated battery, defendants' conviction on this charge was improper. (*People v. Walker* (1975), 26 Ill. App. 3d 955, 326 N.E.2d 63.) Accordingly, defendants' convictions for aggravated battery must be vacated.

## VIII

Defendants' final contention on appeal is that the sentences imposed upon them are excessive and should be reduced. While this court has the power to reduce sentences (Ill. Rev. Stat. 1977, ch. 110A, par. 615(b)(4)), "the imposition of a sentence is a matter of judicial discretion and * * *, absent an abuse of this discretion, the sentence of the trial court may not be altered upon review." (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) The trial judge who heard the testimony at trial and the matters presented at the hearing in aggravation and mitigation is normally in a better position than a reviewing court to determine the punishment to be imposed. (*People v. Butler* (1976), 64 Ill. 2d 485, 356 N.E.2d 330.) The scope of our examination is thus limited to whether the record discloses that the trial court abused its discretion by imposing the sentences in the instant case.

■■ The record clearly reveals that the sentencing judge reached his

decision only after considering the defendants' ages, the circumstances surrounding the crime and the defendants' pre-sentence reports. In fashioning a sentence the trial judge was charged with the difficult task of balancing the heinous nature of the crime against the defendants' lack of criminal records. (Ill. Const. 1970, art. I, §11.) The sentences imposed were within the ranges provided by the legislature for each crime, and we cannot say that the trial court abused its discretion in imposing the sentences in the instant case.

For these reasons, the judgment of the trial court as to the convictions for murder, attempt murder and attempt armed robbery are affirmed; judgment as to the conviction for the offense of aggravated battery is vacated.

Affirmed in part; vacated in part.

DIERINGER and ROMITI, JJ., concur.