THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT CONNOR, a/k/a David Connor, Defendant-Appellant.

First District (2nd Division)    No. 79-303

Opinion filed March 25, 1980.—Rehearing denied April 23, 1980.

Ralph Ruebner and Rafael Schwimmer, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

654

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Defendant was found guilty by jury verdict on charges of attempt murder, two counts of armed robbery, and one count of aggravated battery and was sentenced to one term of 15 to 45 years for attempt murder, two terms of 10 to 30 years for armed battery, and three terms of 2 to 6 years for aggravated battery, all six terms to be served concurrently. One of the key issues is whether the offenses were committed during the early morning hours of December 31, 1976, or the early morning hours of the next day, January 1, 1977. Defendant contends on appeal that defense counsel presented an alibi defense for the wrong day and thereby denied defendant of effective assistance of counsel; the trial court erred when it instructed the jury that intent to commit great bodily harm supports an attempt murder verdict; he was improperly convicted of both aggravated battery and attempt murder; and the trial court improperly sentenced him for attempt murder on the mistaken belief that the minimum sentence was 4 years. For the following reasons, we reverse in part and affirm in part.

The indictments, returned on February 16, 1977, charged that on December 31, 1976, defendant committed the offense of attempt murder of Sammie Lynn Johnson (Ill. Rev. Stat. 1975, ch. 38, par. 8—4), committed two offenses of armed robbery, one of Sammie Lynn Johnson and one of Antoinetta Adams (Ill. Rev. Stat. 1975, ch. 38, par. 18—2), and committed three offenses of aggravated battery on Sammie Lynn Johnson (Ill. Rev. Stat. 1975, ch. 38, par. 12—4). Initially represented by the public defender at his February 24 arraignment, on March 10, 1977, the trial court appointed Chicago Bar Association counsel Lance Haddix and Robert Hodge to represent defendant.

On April 28, 1977, in response to defendant's discovery motion, the State again claimed that the offenses charged occurred "on or about" December 31, 1976, adding that the alleged offenses occurred at "approximately 3:00-5:00 a.m." Defendant's August 2, 1977, answer to the State's discovery motion indicated that the defense planned to call three alibi witnesses, including a Mr. Trimble, to establish that "at the time of the alleged offenses—to wit: 3:00 or 5:00 a.m. January 1, 1977—defendant was either at a lounge called Caesar's Palace * * * or on his way to another party." After jury selection but before opening arguments, defendant filed a supplemental discovery answer in which he listed a fourth defense witness who would testify as to defendant's activities from 4 p.m. on December 31, 1976, until 5 a.m. on January 1, 1977.

The prosecutor's opening statement at the trial asserted the evidence would show that on the morning of December 31, 1976, between 3 a.m. and 4 a.m., defendant robbed two women and shot one of them. In his opening statement, defense counsel did not deny that the crimes had been

committed, but asserted that defendant did not commit them; the question was one of identification and defendant would show that he had an alibi. The following testimony was then elicited at the trial.

The State's first witness, John Battistella, testified that he was a Chicago police robbery investigator on the morning of December 31, 1976, at 3 or 4 a.m. and was on duty. He received an assignment to interview a robbery and shooting victim at Michael Reese Hospital. At the hospital he spoke with Adams and Johnson who gave a description of their assailant. Johnson remained in the hospital and Adams accompanied him to the police station. There she viewed photographs and, although unable to make any positive identification, selected five to seven photographs of men whose faces appeared similar to that of her assailant. Four days later, while at the police station, Battistella saw a man matching the description and held him pending further investigation, later identifying him in court as defendant.

Dr. Rodrigo Cordero testified for the State that during the early hours of December 31, 1976, he examined Johnson and treated her for gunshot wounds in the right side of her back and to the mastoid artery located behind her right ear.

Richard Thoron, a Chicago police officer, testified that he was on duty on December 31, 1976, when at approximately 4 a.m. he was radioed to proceed to a point near the Southerland Hotel, where a woman had been shot. Several minutes later at the hotel he observed a young woman bleeding, who identified herself as Sammie Lynn Johnson. She described her assailant as a male Negro, 21 years of age, 5'7" tall, 165 pounds, with brown eyes, black hair, and a dark complexion. An ambulance thereafter took her to Michael Reese Hospital. Thoron followed the ambulance to the hospital and met Officer Battistella there. He related the description which he had been given to Battistella.

Sammie Lynn Johnson, the State's next witness, was asked by the prosecutor whether she recalled what she did on the night of December 31, 1976. She responded that she and a friend, Antoinetta Adams, went to a boyfriend's house, where they stayed until 3:30 or 4 a.m. and then started home. Deciding to walk, a man approached them from behind and said "stickup." They turned immediately and saw that he was armed with a gun. She identified this man in court as defendant. He demanded all their money, which they denied having, and he then demanded their coats and purses, to which they acceded. Defendant told Adams to run. He then forced Johnson into an alley, where he pushed her against the wall of a building and shot her twice. She fell forwards and blacked out. When she regained consciousness a few seconds later, she rose to her feet and saw defendant running eastward, so she ran in the opposite direction. When she looked back, defendant was looking at her. He said, "you

bitch," then shot her again. Although wounded, she was able to reach the Southerland Hotel, a nearby building where several persons gave her first aid and called the police to whom she gave a description of her assailant.

The State's last witness, James Jones, an investigator for the Cook County sheriff's department, testified he had attempted to secure the presence of Antoinetta Adams at trial, but after an extensive search was unable to find her.

The only defense witness to testify was Hubert Trimble. After preliminary questions, defense counsel asked Trimble where he was on December 31, 1976, at 2 a.m. and Trimble responded that he was at a bar called Caesar's Palace where he saw defendant. Trimble stayed there until about 4:30 a.m. and did not remember defendant leaving before him. The following questions were asked and answers given. Defense counsel: "And this is New Year's Eve we're talking about?" Witness: "Right. Q. Do you remember what day of the week it was? A. That was a Friday." (In 1976, December 31 was a Friday.) Thereafter the trial judge asked the witness, "* * * you say New Year's Eve, your testimony is you * * * were there at 2:00 a.m. on December 31 and that would be the early morning hours of the day which was yet to become New Year's Eve?", to which Trimble responded, "that would be the first", thus apparently referring to the early morning of January 1.

On cross-examination, Trimble first stated that he saw defendant at Caesar's Palace in the morning of December 31. He later said that he may have the days mixed up, then said that the morning he had seen defendant was the morning of Saturday, January 1. The prosecutor moved to strike Trimble's testimony, arguing that it did not relate to the relevant date, but the motion was denied.

In rebuttal, the State called Investigator Battistella who testified that he received his instructions to investigate the incident on Friday, December 31 at 4 a.m.

At the conference on jury instructions, defense counsel did not object to the attempt murder instruction tendered which provided that the intent to do "great bodily harm" supports a guilty verdict for attempt murder.

During closing argument, defense counsel attacked the identification testimony and told the jury that he had not kept his promise to prove an alibi. Four verdict forms were then tendered to the jury: armed robbery of Adams, armed robbery of Johnson, aggravated battery of Johnson, attempt murder of Johnson. All were returned guilty.

In defendant's post-trial motion for a new trial, defense counsel explained that he was misled by the State, although not intentionally, into believing that the alleged offenses occurred on the morning of January 1; he therefore presented an alibi defense for the wrong day. In denying the motion, the court noted that counsel had not revealed the identities of any

new alibi witnesses as to the relevant day. A sentencing hearing was later held in which the trial court explained the sentencing law to defendant, then heard arguments in aggravation and mitigation. Defendant was thereafter sentenced on all six counts as earlier noted.

efendant contends on appeal that he was denied effective assistance of counsel because from the time of his representation by defense counsel until the conclusion of the testimony of the only defense witness, counsel was unaware of the date of the offenses charged (December 31, 1976) and consequently presented an alibi for the wrong date (January 1, 1977). Defendant asserts that he was thereby prejudiced because proper alibi testimony could have existed, the defense was confusing to the jury, and the opening statement promise to show an alibi was not kept. The State argues that although defense counsel may initially have been under a misapprehension as to the date of the offense, by the time of trial he was aware of the correct date. Assuming, *arguendo*, the State alternatively contends, that defense counsel was mistaken as to the date charged, defendant was not prejudiced because there was no showing that proper alibi evidence in fact existed.

■■ Defendant is guaranteed the assistance of counsel under both the United States Constitution (*Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792) and the Illinois Constitution (Ill. Const. 1970, art. I, §8); in the event counsel is so incompetent as to undermine that right, defendant has been deprived of due process under certain circumstances (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677). The Illinois Supreme Court has held that a defendant's due process guarantees are contravened if representation by court appointed counsel demonstrates: "(1) actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney; and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different." (*People v. Morris* (1954), 3 Ill. 2d 437, 449, 121 N.E.2d 810; *People v. Logue* (1970), 45 Ill. 2d 170, 172, 258 N.E.2d 323. See also *People v. Bland* (1978), 67 Ill. App. 3d 716, 384 N.E.2d 1380; *People v. Knowles* (1979), 76 Ill. App. 3d 1004, 1010, 395 N.E.2d 706; and *People v. Smith* (Docket No. 78-1525, Feb. 5, 1980), 81 Ill. App. 3d 764, 401 N.E.2d 1017.) Due process does not require infallibility of the court appointed counsel, however (*People v. Hines* (1975), 34 Ill. App. 3d 97, 100, 339 N.E.2d 489), nor is said counsel required to manufacture a defense when there is none (*People v. Davis* (1974), 16 Ill. App. 3d 846, 849, 306 N.E.2d 897). Finally, it is clear that trial counsel is not a guarantor of successful testimony by a witness. *People v. Pangburn* (1976), 41 Ill. App. 3d 781, 786, 354 N.E.2d 152.

■■ Defendant contends that his appointed counsel prepared and presented a patently erroneous alibi defense centered on defendant's

whereabouts some 24 hours after the alleged incident. This demonstrates, he alleges, that at least up until the opening statements, defense counsel was mistaken as to the correct day because in two discovery answers, one of which was submitted just before opening statements, defense counsel listed witnesses who would testify concerning defendant's whereabouts on the morning of January 1, not the morning of December 31, which was the date asserted in the indictment and State's discovery answer. During examination of the alibi witness, however, Trimble's attention was directed by defense counsel to the morning of December 31, 1976, the relevant day and time. Under the pressure of questioning by the trial judge and cross-examination by the State, Trimble began to equivocate with respect to the date, ultimately testifying that it was the morning of January 1 on which he had seen defendant. One of the purposes of cross-examination is to test the veracity and accuracy of testimony given on direct examination. Testimony rendered dubious under such circumstances is insufficient to support the allegation of incompetency of counsel. *United States ex rel. Ortiz v. Sielaff* (7th Cir. 1976), 542 F.2d 377.

We note parenthetically, in argument on defendant's post-trial motion, defense counsel related, with defendant's consent, defendant told him during the course of his pre-trial conversations that defendant was convinced the event had taken place on New Year's Eve, the night of December 31 and the morning of January 1; he had contacted a friend and discovered that he had a relatively good alibi defense as to the evening in question. The testimony of defendant's alibi witness thus comported with defendant's own understanding of the date for which the alibi was to be presented. The foregoing further diminishes any basis upon which to bottom incompetency of counsel.

■ Defendant asserts that as a result of his attorney's confusion failure to present a proper alibi defense substantially prejudiced him because other alibi evidence may have existed. The State correctly responds, however, that the possible existence of other alibi evidence is speculative and is therefore insufficient to show prejudice. Prejudice by failing to present alibi witnesses requires defendant to show that such witnesses existed. No names or affidavits were presented to the trial court in defendant's post-trial motion indicating that upon retrial an alibi defense could be established; that the outcome of the trial would have been different cannot, therefore, be prognosticated. (*People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3; *People v. Boyce* (1977), 51 Ill. App. 3d 549, 366 N.E.2d 914; *People v. Elliot* (1977), 46 Ill. App. 3d 887, 361 N.E.2d 852; *People v. Spicer* (1976), 42 Ill. App. 3d 246, 355 N.E.2d 711; and *People v. Estes* (1976), 37 Ill. App. 3d 889, 346 N.E.2d 469.) The State argues that, from the totality of the circumstances, there was no "actual incompetency" because defense counsel otherwise performed diligently

in that they participated in pretrial motions, made appropriate objections at trial, rigorously cross-examined witnesses, addressed the identification and reasonable doubt issue, and participated in post-trial motions. We agree. Defendant has failed to show substantial prejudice without which the outcome of the case would probably have been different.

■ Defendant maintains that he sustained prejudice because defense counsel failed to keep his opening statement promise to establish an alibi defense, and argues that nothing falls so flat on jurors' ears as an unfulfilled promise, citing E. Morrill, Trial Diplomacy 23-24 (2d ed. 1976). Recognizing the importance of fulfilling promises made in opening statements, in light of the strong and otherwise uncontradicted evidence of defendant's guilt, we do not believe that the failure here resulted in that type of substantial prejudice which probably would have resulted in a different outcome.

Defendant's reliance on *People v. Robinson* (1979), 70 Ill. App. 3d 24, 387 N.E.2d 114 is misplaced. There the appellate court found ineffective assistance of counsel where defense counsel in his closing argument argued a defense of dwelling after such an instruction had been denied, used an offensive tone of argument, and ostensibly admitted defendant's guilt. The prejudice to the defendant in *Robinson* is markedly different from that putatively sustained at bar. Nor do we find merit in defendant's argument that *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173, stands for the proposition that a reviewing court will presume incompetency of counsel if defense counsel himself claims he was incompetent. There, trial counsel alleged a conflict of interest existing between his client's best interests and his representation of him, based upon a factual revelation to the trial court in advance of trial of his having received confidential adverse information from co-defendants. Such a presumption by a reviewing court after the trial in the instant case would permit " '* * * a lawyer with a desperate case * * * only to neglect it in order to insure reversal or vacation of the conviction.' " *People v. Fleming* (1971), 50 Ill. 2d 141, 145, 277 N.E.2d 872.

■ Defendant argues that *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28, requires a reversal of the attempt murder conviction because of the inclusion of "great bodily harm" language in the definition instructions given to the jury. The State concedes that the instruction was improper but argues that since defendant failed to object to it at trial or in his post-trial motion, the objection has been waived and, further, that the plain error exception is not applicable because the case is not close factually. Under the rule of *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, we find the State's position to be correct.

■ The next issue concerns the propriety of the convictions on the attempt murder and aggravated battery counts. As indicated previously,

defendant was indicted and convicted on one count of attempt murder, two counts of armed robbery, and three counts of aggravated battery. Defendant claims that his actions which resulted in his conviction for attempt murder were the same as those which resulted in his conviction for aggravated battery. Defendant fired two shots into the victim's head at close range; when she regained consciousness and attempted to leave the area, he fired a third shot into her back; therefore, the lesser included offense of aggravated battery must be vacated. The State contends that the third shot is clearly divisible from the first two shots so that convictions on one count of attempt murder and one count of aggravated battery are proper. Defendant's position as to multiple convictions involving closely related acts is supported by *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838. The interval of time between acts is an important consideration in determining whether or not the acts are "a series of incidental or closely related acts" for the purposes of applying *King.* (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671; *People v. Schultz* (1979), 73 Ill. App. 3d 379, 392 N.E.2d 322; *People v. Sanchez* (1977), 52 Ill. App. 3d 404, 367 N.E.2d 585.) If the interval between the first two shots and the third shot was such as to render them "closely related," convictions for both aggravated battery and attempt murder are improper.

■ Case precedent favors defendant's position on this issue. In *People v. Smith* (1978), 59 Ill. App. 3d 480, 375 N.E.2d 941, defendants forced their way into the victim's home, demanded her money, began searching her apartment and then shot her. Twenty minutes later, before leaving the apartment, they shot her again, which was found to be the "same actions" of defendants, allowing the attempt murder conviction to stand but requiring reversal of the aggravated battery finding. In *People v. Brock* (1978), 64 Ill. App. 3d 64, 380 N.E.2d 1102, when defendant pointed a gun at the victim, the victim lunged at him, and the gun went off striking the victim in the chest. As he started to crawl away, defendant shot him again. Defendant was convicted of both attempt murder and aggravated battery, but the latter conviction was reversed based on *People v. King.* In *People v. Walker* (1975), 26 Ill. App. 3d 955, 326 N.E.2d 63, a police officer involved in an altercation with one Gage was shot by defendant, standing nearby. Gage and another then began to strike the officer who broke free. As he ran away, he was again shot by his assailants. As he returned the fire, he was then struck by another bullet. Defendant was convicted of both aggravated battery and attempt murder, but the former conviction was reversed because "defendant's actions which resulted in his conviction for attempt murder were the same actions which resulted in his conviction for aggravated battery, *i.e.*, the shooting of Officer Arnold." (26 Ill. App. 3d 955, 960. *Cf. People v. Childs* (1978),

62 Ill. App. 3d 924, 379 N.E.2d 721.) In the instant case, the three shots fired by defendant were a "series of incidental or closely related acts" because the relative sequence of events occurred within a short period of time, less than a minute, in one location, and upon one victim. Aggravated battery being a lesser-included offense of attempt murder and the acts having been closely related, the conviction and sentences for aggravated battery must be vacated. *People v. King.*

With respect to the sentencing issue, defendant identifies error in the trial court's interpretation of section 8—4(c)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8—4(c)(1)), as requiring a 4-year mandatory minimum sentence for attempt murder. At the sentencing hearing the trial court informed defendant that under both the old and new law, a sentence could be imposed for attempt murder "in any amount for the next highest felony under that, that is, for since it's attempt murder it would be for the felony next under murder"; that murder was a Class 1 felony under the old law and a Class X felony under the new law; and that "under the old statute, the judge is obliged to impose both a minimum and maximum term * * *. The Class One felony prescribes under the old statute a minimum of four years and unlimited maximum." Defendant elected to be sentenced under the old statute and the court sentenced him to a minimum of 15 years and a maximum of 45 years for attempt murder.

■■ The supreme court has held that sections 8—4(c)(1) and 1005—8—1(b)(2) do not require a mandatory minimum sentence of 4 years for attempt murder in *People v. Moore* (1978), 69 Ill. 2d 520, 372 N.E.2d 666. The trial judge's statements referred to by defendant show only a possibility that he had misinterpreted the statute as requiring a 4-year minimum sentence, which is not sufficient for reversal under *People v. Schomer* (1978), 64 Ill. App. 3d 440, 381 N.E.2d 62. Furthermore, error does not appear to have influenced his sentencing decision. In *People v. Eddington* (1979), 77 Ill. 2d 41, 48, 394 N.E.2d 1185 the supreme court held that "a misstatement of the understanding of the minimum sentence by the trial judge necessitates a new sentencing hearing only when it appears that the mistaken belief of the judge arguably influenced the sentencing decision." In *Eddington*, although the trial judge misstated the sentencing law, the supreme court found no indication that he had used the 4-year minimum as a reference point in his decision, principally because he set the minimum at 20 years and because of the numerous aggravating circumstances present. Likewise at bar, the trial judge did not rely on the erroneous statement, having set the minimum at 15 years and because aggravating factors here, also, were present. No reason emerges from these circumstances requiring remand of this case for resentencing.

For the reasons aforesaid, the convictions and sentences for

aggravated battery are reversed and vacated; the convictions and sentences for armed robbery are affirmed; and the conviction and sentence for attempt murder is affirmed.

Reversed in part; affirmed in part.

PERLIN, P. J., and STAMOS, J., concur.