THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KENNETH BROCK, Defendant-Appellant.

First District (2nd Division)   No. 77-365

Opinion filed September 12, 1978.

James J. Doherty, Public Defender, of Chicago (Robert J. Mangan, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joseph P. Quirk, and Ira H. Raphaelson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BROWN delivered the opinion of the court:

Defendant, Kenneth Brock, was charged by indictment with attempt murder (Ill. Rev. Stat. 1973, ch. 38, par. 8—4) and two counts of aggravated battery (Ill. Rev. Stat. 1973, ch. 38, pars. 12—4(a) and 12—4(b)(1)). He was tried in the circuit court of Cook County by a jury, which found him guilty of attempt murder and aggravated battery. The trial court entered judgment on the verdicts, and sentenced him to serve not less than 10 nor more than 30 years in the Illinois State Penitentiary for attempt murder.

The following issues are raised for our review: (1) whether the jury instructions erroneously permitted a verdict of guilty on the charge of attempt murder without a finding that defendant possessed the requisite

intent to kill; (2) whether defendant was improperly convicted of both attempt murder and aggravated battery; (3) whether he was proved guilty beyond a reasonable doubt of attempt murder and aggravated battery; and (4) whether the State proved beyond a reasonable doubt that he did not act in self-defense.

The pertinent facts follow.

On May 5, 1974, at approximately 5 a.m., complainant, Richard McDavis, was with Rosetta Hill in her apartment at 7813 S. Essex in Chicago. At that time, defendant knocked at the entrance door to the apartment. Hill described her apartment as follows: As you entered, just to the left of the living room would be the hall. Off the hall there is a bedroom and further down the hall is a washroom. At the other end of the hall, there is a dining room and a kitchen.

Complainant testified that while Hill answered the door, he went to the bathroom. The bathroom door was shut and the bathroom light was on while he washed his hands and face. The door opened up slowly and he turned sideways and saw defendant standing in the hallway by the bathroom doorway. He testified that as defendant opened the door with his left hand, defendant drew a revolver with his right hand and pointed it at him. He lunged or leaped approximately four or five feet towards defendant and knocked defendant against the wall; his head was on defendant's chest and his hands were on defendant's arms. He stated that he was then shot in his chest and fell slowly to the floor of the hallway. He started to crawl towards the living room on his hands and elbows and was shot in the left side of his neck; he then lay motionless.

Hill testified that complainant came to her apartment about 1 a.m. She stated that they had a few drinks and fell asleep on the living room couch. She woke up to a knock on the door, and complainant went to the washroom. Defendant came in and she told him she wanted to talk to him. She sat down on the couch and he set a cup of coffee on the cocktail table with his left hand; she then noticed that he had a gun in his right hand. She stated that defendant walked into the bedroom and turned the bedroom light on and off and heard him walk down the hall. She then heard a bang as if a door had hit a wall and heard a shot. She ran out of the apartment, and upon thinking of her baby son asleep in the bedroom, ran back into the living room and heard a second shot. She did not see defendant or complainant when the shots were fired. Defendant walked past her out of the apartment, still holding the weapon. He stopped at the head of the stairs and started to raise the gun again and then walked down the stairs. She called the police.

Hill further testified that defendant telephoned her later that day and he said that he did not care about what he did; that he did not care that the guy was probably going to be paralyzed; that he tried to kill him; that

she ought to be dead, too, and would be "pushing up daisies" if it weren't for her children; and that it would be wise for her not to show up in court.

Defendant testified that he came to Hill's apartment pursuant to her telephone call that morning. He entered and sat down in the living room, which was dark. As Hill went towards the bedroom, he asked her for a glass of water, and she replied that there is some in back, in the refrigerator. She went into the bedroom and left the bedroom door slightly ajar. As he walked past the bedroom, which was lit, he noticed her two sons sleeping in bed through the opening in the bedroom door. As he walked past the bathroom, he noticed that the bathroom door was closed with the light out. He drank some water, and walked back towards the front room, and noticed that there was no light under the bathroom door. As he walked past the bathroom, the door flew open and he was struck with two blows to his back. Defendant fell on his back with complainant on top of him, his right knee on defendant's left shoulder, his right hand around defendant's throat applying pressure, his left hand patting down defendant's chest and sides. Defendant pulled his .357 Magnum pistol from his right kidney area and shot complainant in the chest. Complainant then put his left hand around defendant's throat and continued to choke him; he beat defendant's head against the floor. Defendant reached behind complainant and shot him in the back of the neck; complainant released the pressure and defendant slid from under him.

Defendant testified that he left the apartment, accusing Hill on his way out of trying to set him up. He stated that he went straight home, and did not go to the police because he felt his version of the incident would not be believed because of his police record. He stated that he didn't toss the .357 away; that it just fell out.

Officer Blakey of the Chicago Police Department arrived on the scene with his partner and found the complainant lying face down in the hallway with his head towards the living room. Officer Blakey testified that complainant was approximately two feet from the living room and six and a half to seven feet from the bathroom. He stated that there was a small amount of blood between the bathroom and where he lay and a larger amount underneath him. A police squadrol took complainant to South Shore Hospital.

Complainant testified as to the severe injuries he received from the gunshot wounds, including loss of feeling in the lower extremities, loss of control of bodily functions, and loss of hearing.

Defendant was arrested on June 2, 1974. He testified that he ran from the arresting officers so that he could get rid of a .25 caliber pistol in his possession, which he had recently acquired in Michigan. He stated that he told Investigator Huffman that the man tried to rob him, that he shot in

self-defense, and that the guy that jumped him must have had the gun. He then testified that he had the gun when he went to the apartment. He denied telling Investigator Huffman that he went to his ex-girlfriend's house and that he took off his shoes when he entered.

Investigator Huffman of the Chicago Police Department testified in rebuttal that defendant had told him on June 2, 1974, that he had gone to see his ex-girlfriend; that when he entered the apartment, he took off his shoes and noticed a light in the bathroom; and that he went by the door and somebody jumped on him.

As to the relationship of the defendant and Hill, Hill testified that she had known defendant for a couple weeks before May 5, 1974, the date of the shooting; that she had slept with him when he spent the night several times; and that he was her boyfriend. Defendant testified that he had known Hill for approximately 2½ months before May 5, 1974; that he had been at her house twice before that date; and that he did not consider himself to be her boyfriend. Both complainant and Hill testified that complainant and defendant spent the night of May 2, 1974, in Hill's apartment. Hill testified that defendant slept with her that night. Defendant denied that he had slept with Hill that night. He testified that the first time he saw complainant was on May 5, 1974. As to the relationship of the complainant and Hill, complainant testified that he had known Hill for approximately eight or nine months before May 5, 1974; that he saw her about once a week in the Glass House Lounge; and that approximately 1½ weeks before May 2, 1974, he and Hill became closer friends. Complainant testified that he and Hill had sexual intercourse on May 5, 1974.

The first contention raised by the defendant is that the instructions permitted the jury to find him guilty of attempt murder without a specific finding of intent to kill.

The prosecution tendered the following instructions which were given to the jury:

"A person commits the crime of attempt who, with intent to commit the crime of murder, does any act which constitutes a substantial step toward the commission of the crime of murder.

The crime attempted need not have been committed." IPI Criminal No. 6.05.

"A person commits the crime of murder who kills an individual if, in performing the acts which cause the death,

he intends to kill or do great bodily harm to that individual; or

he knows that such acts will cause death to that individual; or

he knows that such acts create a strong probability of death

or great bodily harm to that individual." IPI. Criminal No. 7.01.

"To sustain the charge of attempt, the State must prove the following propositions:

*First*: That the defendant performed an act which constituted a substantial step toward the commission of the crime of murder; and

*Second*: That the defendant did so with intent to commit the crime of murder.

*Third*: That the defendant was not justified in using the force which he used.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty." IPI. Criminal No. 6.07.

■■ In *People v. Harris* (1978), 72 Ill. 2d 16, 27, 377 N.E.2d 28, our supreme court stated: "An instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown." In *People v. Washington* (1st Dist. 1978), 60 Ill. App. 3d 662, 666, 377 N.E.2d 397, 400, also involving instructions in an attempt murder case it was therein stated:

"The instructions in the instant case twice stated the requirement of intent to kill as an element of attempt murder. (IPI Criminal Nos. 6.05 and 6.07.) But the instruction which defined murder did not limit the mental state to intent to kill; it also defined the mental state required as, alternatively, intent to do great bodily harm, knowledge that the acts will cause death, or knowledge that the acts create a strong probability of death or great bodily harm. (IPI Criminal No. 7.01.) Judged by the standard established in *Harris*, this was erroneous."

Under the authority of *Harris* and *Washington*, we reverse defendant's conviction for attempt murder and remand for a new trial.

■■ Defendant next contends that he was improperly convicted of both attempt murder and aggravated battery. We agree. We find that defendant's conviction for aggravated battery was improper because aggravated battery is a lesser included offense in the crime of attempt murder and the offense arose from a single incident in which two shots were fired. *Cf. People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838; *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1; *People v. Smith* (1st Dist. 1978), 59 Ill. App. 3d 480, 493, 375 N.E.2d 941; *People v. MacRae*

(1st Dist. 1977), 47 Ill. App. 3d 302, 361 N.E.2d 685; *People v. Walker* (1st Dist. 1975), 26 Ill. App. 3d 955, 326 N.E.2d 63; *People v. Childs* (1st Dist. 1978), 62 Ill. App. 3d 924, 379 N.E.2d 729, wherein the court held that the aggravated battery convictions did not result from the same conduct which made up the basis for the attempt murder conviction.

As we have reversed defendant's conviction for attempt murder, we also reverse and remand defendant's conviction for aggravated battery so that the charges may be tried again with the jury properly instructed. *Washington.*

In view of our disposition of the first two issues raised in this appeal, we need not consider the remaining issues presented by defendant.

The cause is remanded for a new trial consistent with the views expressed herein.

Reversed and remanded.

DOWNING and PERLIN, JJ., concur.