THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FERNANDO GUZMAN, Defendant-Appellant.

First District (1st Division) No. 1—85—2147

Opinion filed December 31, 1990.

526

Randolph N. Stone, Public Defender, of Chicago (Sharon M. Shapiro and Aaron L. Meyers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Inge Fryklund, Marie Quinlivan Czech, and Daniel J. Lynch, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

The defendant, Fernando Guzman, was indicted on two counts of attempted murder, six counts of aggravated battery and four counts of armed violence. Following a bench trial, he was convicted of one count of attempted murder, three counts of aggravated battery and one count of armed violence committed against Ricardo Suliveres. He was also convicted of three counts of aggravated battery committed against Moses Suliveres and acquitted of the attempted murder of Moses Suliveres. The defendant was sentenced to serve six years in the Illinois Department of Corrections for the attempted murder and armed violence convictions and a term of three years was imposed on the remaining counts with all sentences to run concurrently.

The defendant appeals these convictions, contending that: (1) the conviction for attempted murder must be reversed because the State failed to prove beyond a reasonable doubt that he did not act in self-defense; (2) convictions on six counts of aggravated battery must be vacated where the one physical act of shooting the gun constituted the basis for each of the convictions; (3) the conviction on one count of armed violence must be vacated because it constitutes double enhancement; and (4) he was denied effective assistance of counsel.

The following evidence was adduced at trial. Both Ricardo and Moses Suliveres testified to substantially the same facts. They were visiting friends in the area near 28th Street and Homan Avenue on the date in question. At approximately 12:45 a.m., they left the gathering in separate cars accompanied by some of their friends. Ricardo drove his friend "Munch" home to inform Munch's mother that he was going to spend the night at Ricardo's house. He then drove his friend "Rito" home because Rito was intoxicated. Rito lived directly across the street from a vacant lot known to be the "hang-out" for the Villalobos street gang. After Ricardo assisted Rito to his front door, he returned to his car, at which time he noticed defendant and 15 to 25 members of the Villalobos gang approach him while making gang signals. He further observed that defendant was carrying a bottle. Defendant challenged Ricardo to a fight, and an argument ensued. Defendant accused Ricardo, Moses, Munch and their friends of violating the Villalobos nation's neighborhood. During the argument, Raphael, a member of the Villalobos' gang, handed defendant a gun. The defendant then shot Ricardo, who was unarmed. He was shot six times. Moses made an attempt to take the gun from defendant. Defendant then shot Moses in the lower abdomen. Defendant pointed the gun at Munch and pulled the trigger, but the gun failed to discharge. Munch ran away from the scene to his home a half block

away. Moses began running on St. Louis Street. However, his friends caught him, took him home, and thereafter, he was taken first to St. Anthony's Hospital and subsequently to Cook County Hospital, where he spent a week and a half recuperating from the gunshot wound to his abdomen.

Ricardo drove himself to Cook County Hospital, where he spent three days recovering from the six shots in his chest, arm, index finger, hip, penis and thigh. He also spent two weeks at home recovering from his injuries. Munch testified for the State substantially similar to Moses and Ricardo with a few minor differences. All of the State witnesses testified that neither of the two victims was armed with a weapon.

Defendant's testimony and that of Jose and Valentin differed greatly from that of the State's witnesses. Jose and Valentin both testified on defendant's behalf. Both of these witnesses recalled driving with the defendant past the victims at 24th and St. Louis. They stated that the victims and those accompanying the victims gave them prolonged stares as they drove by. They also corroborated defendant's version as to who the initial aggressor was. They both testified that Ricardo initiated a conversation with defendant, accusing him of yelling at him or "representing." They also both testified that Ricardo shoved defendant, and it was at that time that defendant invited Ricardo to walk to the alley and fight. Defendant's witnesses agreed with the State's witnesses that Ricardo was unarmed but disagreed that Moses was unarmed. They stated that Moses not only wielded a knife, but he approached defendant and threatened to kill him. Jose acknowledged that 10 to 15 individuals, some of whom he recognized as members of the Villalobos gang, were in the vicinity but not in the vacant lot. Defendant stated that he and two friends, Jose Sandoval and Valentin Rivera, were standing outside of Jose's car, which was parked in a vacant lot on South St. Louis Avenue, eating pizza and laughing and joking loudly. He and Jose were prior members of the Villalobos street gang, but Valentin was currently a member of that gang. While he conceded that the vacant lot was a hangout for members of the Villalobos gang and that, as a matter of fact, there was a gathering of gang members at that location on the night of the shooting, he denied that he, Jose and Valentin were with them. He explained that they had decided to cruise the neighborhood girl watching, became hungry, purchased pizza and french fries and went to the vacant lot to eat and play around. He claimed they chose that location because it was close to home and they could think of nowhere else to go to eat. As they stood outside the parked car talking loudly with

one another, Ricardo Suliveres was passing by, stopped the car he was driving, and confronted them about why they were "representing" towards him. Defendant claims he denied they were "representing" (making gang signals) and then Ricardo pushed him. At that time he responded to the push by inviting Ricardo to a fight in the alley and an argument ensued. He further stated that about then he noticed Ricardo's brother Moses approach him as Moses took a knife out of his pocket. He admits that Ricardo was unarmed. He said Moses came at him with the knife in his hand and threatened to kill him. He became frightened and began backing up, at which time somebody handed him a gun. He began shooting aimlessly at both brothers' legs to "get them off of" him and because he thought they were going to kill him. After the shootings he hid from the police for approximately six weeks, spending one night each with two uncles in Chicago, and approximately six weeks with an uncle in California. The defendant then returned to Chicago and turned himself in to the Chicago police.

■■■ Defendant first contends that his convictions should be reversed because the State failed to prove beyond a reasonable doubt that he was not acting in self-defense when he shot Ricardo. A person is justified in using deadly force where the person "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself." (Ill. Rev. Stat. 1987, ch. 38, par. 7—1.) Moreover, when the affirmative defense of self-defense has been raised, the State has the burden of proving beyond a reasonable doubt that the defendant was not acting in self-defense. (Ill. Rev. Stat. 1987, ch. 38, par. 3—2(b).) The test to be utilized in making this determination is what a reasonable person under these circumstances would have subjectively believed. (*People v. White* (1980), 87 Ill. App. 3d 321, 323, 409 N.E.2d 73, 74; *People v. Brumbeloe* (1968), 97 Ill. App. 2d 370, 240 N.E.2d 150.) When it has been determined that a defendant was initially shooting in self-defense, the State must then prove that a sufficient amount of time had passed between the initial shot and any subsequent shots which would have allowed the defendant, as a reasonable person, to realize that no further shooting was necessary. *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *People v. Bailey* (1975), 27 Ill. App. 3d 128, 134, 326 N.E.2d 550, 555.

The defendant argues that in finding that he was acting in self-defense, the trial court properly concluded that he was not guilty of attempted murder of Moses, and the testimony revealed that all shots occurred within a matter of seconds. The defendant contends that the State failed to prove that he was not acting in self-defense when the

shooting occurred where: two witnesses testified that it was Ricardo who initially confronted Guzman; three witnesses testified that Moses threatened to kill the defendant; Ricardo pushed Guzman, who responded by challenging Ricardo to a fight; and Moses approached the defendant with a knife who responded by shooting Ricardo and Moses in fear for his life. The defendant contends that he had reason to believe that Moses and Ricardo were going to kill him since Moses had a knife and they were in such close proximity when he shot them. Moreover, he argues that he was justified in using deadly force to protect himself from both men acting in concert and his response was reasonable under the circumstances. See *White*, 87 Ill. App. 3d 321.

The defendant maintains that the fact that Ricardo did not have a weapon does not establish that he was not acting in self-defense. Moreover, the State failed to produce any evidence that a sufficient amount of time had elapsed between the initial shot and subsequent shots which would have allowed the defendant to realize that further shooting was not necessary. Therefore, his conviction for attempted murder cannot stand. See *Bailey*, 27 Ill. App. 3d 128; *People v. McGraw* (1958), 13 Ill. 2d 249, 149 N.E.2d 100.

■ While we agree that the elements of self-defense as articulated by defendant are correct to the extent that he goes, we hasten to point out that he has not set forth every element of self-defense. Self defense is an affirmative defense which a defendant may raise only if he presents some evidence of each element of the defense (*People v. Kyles* (1980), 91 Ill. App. 3d 1019, 415 N.E.2d 499) or if the People's evidence raises it. Ill. Rev. Stat. 1987, ch. 38, par. 3—2(a).

Such a defense is raised when (1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm is imminent; (4) the person threatened must actually believe (a) that a danger exists, (b) the use of force is necessary to avert the danger, and (c) the kind and amount of force which he uses is necessary; and (5) the above beliefs are reasonable. Additionally, the use of deadly force is limited to those situations in which the threatened force will cause death or great bodily harm or the force threatened is a forcible felony. *People v. Williams* (1965), 56 Ill. App. 2d 159, 165-66, 205 N.E.2d 749, 752; *People v. Ross* (1981), 100 Ill. App. 3d 1033, 427 N.E.2d 955.

■ The resolution of the issue of self-defense is for the trier of fact, and the trier of fact need not accept as true the evidence in favor of self-defense. (*People v. Johnson* (1988), 172 Ill. App. 3d 371, 377, 526 N.E.2d 611.) Instead, the trier of fact must consider the probability or improbability of the evidence, the circumstances sur-

rounding the crime, and the witnesses' testimony. (*Johnson*, 172 Ill. App. 3d at 377.) A court of review will not disturb the trier of fact's decision regarding self-defense unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of guilt. (*Johnson*, 172 Ill. App. 3d at 377.) In a criminal bench trial, the trial court's determinations of witness credibility and sufficiency of the evidence will not be reversed unless the evidence was so improbable as to create a reasonable doubt of guilt. (*People v. Hall* (1986), 114 Ill. 2d 376, 410, 499 N.E.2d 1335.) The standard of review, as articulated in a recent supreme court decision, is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *People v. West* (1990), 137 Ill. 2d 558, 584.

■ In the case at bar, the resolution of defendant's guilt depended upon the credibility of the witnesses and the weight accorded to their testimony. These determinations were within the province of the trial judge, who observed the witnesses and listened to their testimony. The State's witnesses testified that the defendant was the aggressor and the defendant testified that the victim, Ricardo, approached and shoved him. In our view the trial court could have properly concluded that defendant's testimony defied belief, considering that Ricardo was only accompanied by Moses, Munch and Noel but defendant was surrounded by not only Valentin and Jose, but 15 to 25 members of the Villalobos gang.

Moreover, we agree with the State that in the case at bar, neither defendant's evidence, nor the prosecution's evidence raised the issue of self-defense in connection with the charge of attempted murder of Ricardo Suliveres. Defendant used deadly force on both victims. However, by defendant's own admission, Ricardo was unarmed. Notwithstanding that fact, defendant shot Ricardo six times from a distance of three feet. Assuming the truthfulness of everything defendant stated in his testimony, at the most Ricardo committed a plain assault or a simple battery. The alleged menacing manner in which Ricardo approached defendant could not have caused death or great bodily harm to defendant nor is a plain assault or simple battery a forcible felony.

■ Assuming *arguendo* that defendant raised the issue of self-defense, we further concur with the State that defendant's acts nevertheless were inconsistent with self-defense. Defendant's version of the occurrence was that while both brothers threatened him while in close proximity with one another, Moses was wielding the knife. Yet he

turned first to unarmed Ricardo, who posed the least threat of the two, and shot him six times and then turned to the alleged knife-wielding Moses and shot him once.

While defendant argues that he was not shooting at either victim in particular, his own witness, Jose Sandoval, corroborated the testimony of State witnesses that defendant first shot Ricardo six times before turning to shoot Moses. It would appear more logical and reasonable that defendant would have shot at Moses first and would have also fired more shots at Moses, who posed a more serious threat because of the alleged knife. Accordingly, we find that deadly force as a means of self-defense was not justified even if the evidence raised the self-defense issue.

■■ Defendant's final argument on the issue of self-defense that the trial court's finding of not guilty of attempted murder of Moses was indicative of the court's finding that defendant acted in self-defense as to Ricardo is not supported by the trial record. The court did not articulate any reasons for its finding of not guilty. But, even if the court found defendant not guilty because it determined that he was acting in self-defense as to Moses, this would not relate to the unarmed Ricardo, who was shot, not one time, but six times.

Defendant next claims that the convictions for aggravated battery must be vacated. His argument is twofold: First, since he was found not guilty of attempted murder of Moses Suliveres with a gun, his aggravated battery convictions relating to Moses based on his use of the gun cannot stand, and secondly, that the convictions for aggravated battery against Ricardo should be vacated where all three counts were predicated on one physical act, *i.e.*, the shooting of the gun. Defendant maintains that the act of shooting a gun cannot be the basis for multiple convictions since he was found guilty of attempted murder of Ricardo by shooting a gun.

■■ With respect to victim Moses, the State concedes that the evidence presented during the trial only supports one of three convictions for the aggravated battery committed against Moses, who was shot once in the abdomen. In *People v. King* (1977), 66 Ill. 2d 551, 565, 363 N.E.2d 838, the Illinois Supreme Court concluded that a trial court could not carve out multiple offenses from the same physical act.

■■ The State argues vigorously, however, that the finding of not guilty of the attempted murder of Moses has no bearing on the validity of the conviction for and sentence on the aggravated battery. We agree. Aggravated battery is a lesser-included charge of attempted murder and, as such, less need be proved. (*People v. Anderson* (1982),

108 Ill. App. 3d 563, 572, 439 N.E.2d 65; *People v. Bryant* (1984), 123 Ill. App. 3d 266, 462 N.E.2d 780.) Specifically, attempted murder requires proof of specific intent to kill, which is not a prerequisite to a finding of guilty of aggravated battery. *People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535.

Hence, we agree with the State that the evidence of one physical act supports only one conviction for the aggravated battery against Moses. Accordingly, we vacate two of the three judgments and sentences for aggravated battery committed against Moses.

We next are called upon to determine whether defendant's convictions and concurrent sentences for aggravated battery committed against Ricardo must be vacated because they were based upon the same physical act as the conviction for attempted murder. Defendant, in his brief and more vigorously at oral argument, asserts that he cannot be convicted of both attempted murder and aggravated battery predicated in both instances on the shooting of the gun at Ricardo and striking him. The State counters by suggesting that because the evidence revealed that Ricardo was shot five times in different parts of the body, each of these shots constituted separate and distinct physical acts, and therefore, each could be the basis for a conviction. The State cites *People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 525, wherein the court determined that the slitting of the throat twice by defendant constituted two separate and distinct physical acts. (*Myers*, 85 Ill. 2d at 289.) While defendant, at oral argument, maintained that defendant was charged only with shooting Ricardo in the abdomen, the criminal information which is part of the record herein reveals that, contrary to that representation, defendant was charged with shooting Ricardo "about the body."

We believe, however, that notwithstanding the defendant's mistaken factual belief regarding the language contained in the information, his legal position has merit in the instant factual matrix. The State's reliance on *Myers* is misplaced. The question in *Myers* was whether defendant Myers' behavior supported convictions and concurrent sentences for attempted murder and for armed violence based on aggravated battery. In *Myers* the defendant had cut a victim's neck twice in two closely related movements with a knife, interrupted after the first cutting by an intervening act of attacking another victim. The appellate court held that the attempted murder was a lesser-included offense of the armed violence charge. The Illinois Supreme Court, in reversing the appellate court, held that the armed violence conviction was based upon the underlying felony of aggravated battery, which does not require proof of the intent to kill that is neces-

sary for the attempted murder conviction. (*Myers*, 85 Ill. 2d at 287.) Accordingly, they held that under that particular factual matrix, attempted murder was not a lesser-included offense.

■■■ In the case at bar, the question is whether defendant's behavior supports convictions and concurrent sentences for attempted murder and aggravated battery. In *People v. King* (1977), 66 Ill. 2d 551, the Illinois Supreme Court stated:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. *** We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." *King*, 66 Ill. 2d at 566.

■■■ Unlike the charges in *Myers*, aggravated battery, as we have previously discussed herein, is a lesser-included offense of the charge of attempted murder. (*People v. Gvojic* (1987), 160 Ill. App. 3d 1065, 1071, 513 N.E.2d 1083; *People v. Washington* (1984), 127 Ill. App. 3d 365, 389, 468 N.E.2d 1285; *People v. Brock* (1978), 64 Ill. App. 3d 64, 68, 380 N.E.2d 1102; *People v. Childs* (1978), 62 Ill. App. 3d 924, 926, 379 N.E.2d 721; *People v. Washington* (1978), 60 Ill. App. 3d 662, 668, 377 N.E.2d 397.) The question becomes whether the aggravated battery convictions in the case at bar emanate from the same physical act as the attempted murder conviction. The factors that must be taken into account in determining whether the defendant's conduct constituted a single physical act or several separate and distinct acts are: (1) prosecutorial intent, as reflected in the language of the indictment; (2) the existence of an intervening act; (3) the time interval between successive parts of the defendant's conduct; (4) the victim's identity; (5) the similarity of the acts; and (6) the location of the acts. *People v. Ellis* (1986), 143 Ill. App. 3d 892, 895-96, 493 N.E.2d 739.

■■■ In applying the foregoing factors to the case at bar, we conclude that defendant's convictions and sentences for aggravated battery must be vacated. The evidence revealed that defendant rapidly fired six consecutive shots at Ricardo in a single location. The shots struck him in the chest, arm, index finger, hip, penis and thigh. There were no intervening acts separating the shots. The criminal information charging defendant with the three counts of aggravated battery and the attempted murder of Ricardo predicated all four of the offenses upon "shooting him about the body with a gun." In light of the foregoing

circumstances, we find that defendant's convictions for the attempted murder and three counts of aggravated battery were based upon a single physical act, and therefore, the aggravated battery convictions and sentences must be vacated. See *Washington*, 127 Ill. App. 3d at 389; *Brock*, 64 Ill. App. 3d at 68; *People v. Smith* (1978), 59 Ill. App. 3d 480, 493, 375 N.E.2d 941.

To compound the intricacy of the factual matrix in the instant case, defendant was also convicted of armed violence. Defendant maintains that this conviction must be vacated because it constitutes double enhancement. Defendant relies for this contention upon *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, and *People v. Bragg* (1984), 126 Ill. App. 3d 826, 467 N.E.2d 1004. In *Haron*, defendant was charged with unlawful use of a weapon, aggravated battery and armed violence based upon the felony of aggravated battery. The enhancement of the offense of battery to that of aggravated battery was based on the use of a deadly weapon. The court held that the General Assembly did not intend that the presence of a weapon serve to enhance an offense from misdemeanor to felony and also to serve as the basis for a charge of armed violence. (*Haron*, 85 Ill. 2d at 278.) Likewise in *Bragg*, this court held that the defendant's conviction of armed violence clearly constituted double enhancement and, accordingly, the conviction was reversed. The armed violence count in *Bragg*, however, was predicated on a conviction of aggravated battery with a deadly weapon under section 12—4(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(1)). Defendant's reliance on *Haron* and *Bragg* is misplaced. Unlike *Haron* and *Bragg*, in the case at bar, the armed violence count upon which a conviction was entered is predicated upon the attempted murder charge, not the aggravated battery count. Hence, we fail to see any issue of double enhancement.

Lastly, the defendant claims that he was denied effective assistance of counsel, and therefore, his case must be reversed and remanded.

Specifically, defendant asserts that his trial counsel failed to file preliminary motions on his behalf; failed to object to hearsay; and failed to object or limit the introduction of prejudicial and immaterial evidence of gang involvement. (See *People v. Cruz* (1987), 164 Ill. App. 3d 802, 518 N.E.2d 320.) The defendant argues that he is entitled to a new trial where his trial attorney's incompetence produced substantial prejudice to the defendant and but for counsel's incompetence the result of the trial would probably have been different. *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.

Defendant contends that the testimony pertaining to gang membership was irrelevant since neither the victims nor the defendant were

members of a gang at the time the crimes occurred. However, the prosecutor made 22 references to gangs, and the defense counsel made over 27 references to gang activity. Both the prosecutor and the defense counsel posed their questions in such a way to imply that the defendant was a member of a gang at the time of the shootings which served to substantially prejudice the defendant.

 The State argues that the defendant failed to prove that he was prejudiced by the conduct of his trial counsel. Moreover, even if the evidence was improperly admitted, the record does not reflect that the trial judge considered such evidence. In order to successfully raise an ineffective assistance of counsel argument, the defendant must show that counsel's representations were unreasonable and counsel's shortcomings were so serious that the defendant was denied a fair trial. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) The defendant must show that but for trial counsel's errors, the result of the trial would have been different. *Albanese*, 104 Ill. 2d 504.

 The State asserts that in the instant case, the defendant did not address the second element required to establish an ineffective assistance of counsel claim. The defendant alleges substantial prejudice; however, even without the disputed evidence, the remaining evidence proves beyond a reasonable doubt that the defendant committed the crimes for which he was convicted. The undisputed evidence reveals that the defendant first shot the unarmed Ricardo six times and then the armed Moses only once. He then fled from the scene of the crime. Moreover, where a case is tried before a bench, the trial judge is presumed to consider only competent evidence and that presumption can only be overcome when the record affirmatively shows the contrary. (*People v. Alford* (1982), 111 Ill. App. 3d 741, 444 N.E.2d 576.) In the present case, the record does not show that the trial judge considered incompetent evidence. The competency of trial counsel is determined by reviewing the totality of counsel's conduct at trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 696-98, 80 L. Ed. 2d 674, 699-700, 104 S. Ct. 2052, 2069-70.) Furthermore, incompetency of trial counsel is not established by the mere failure of counsel to object to inadmissible evidence. *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed in part and vacated in part.

Affirmed in part; vacated in part.

BUCKLEY, P.J., and O'CONNOR, J., concur.