THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH CULLEN, Defendant-Appellant.

First District (1st Division)   No. 1—90—3342

Opinion filed July 20, 1992.—Rehearing denied October 1, 1992.

Rita A. Fry, Public Defender, of Chicago (Richard E. Gade, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant Kenneth Cullen was found guilty of the murder of Raymond McCaffrey and sentenced to 25 years' imprisonment. On appeal, defendant contends that: (1) the prosecutor improperly characterized a witness' statement during closing argument as her opinion that he was guilty of murder; and (2) the State failed to prove him guilty of murder beyond a reasonable doubt. For the following reasons, we affirm the judgment of the trial court.

The following facts are relevant to this appeal. Defendant was arrested on February 1, 1989, and charged with murder for the shooting death of Raymond McCaffrey. The facts disclose that McCaffrey

was fatally shot in front of 5328 West Wellington, Chicago, Illinois, in the early morning of February 18, 1984. At trial, Carol Brown testified that she lived with defendant, a Chicago police officer, as his common law wife and that they had six children together. Brown stated that on January 31, 1989, she and defendant were at a tavern when they began an argument concerning financial matters. At 9 p.m., Brown left the tavern and went to the 25th District police station, where she told Watch Commander Egan about her problems with defendant. Egan had known defendant for approximately 23 years, the period defendant had been with the Chicago police department. Brown told Egan that she wanted defendant to leave the house, and Egan told Brown that there was nothing he could do because defendant had not done anything wrong. Brown became hysterical, and replied, "what about murder?" She then told Egan the details of the shooting on February 18, 1984, and later related everything she could recall about the shooting to Detective Richard Schak.

Brown stated that on the evening of February 17, 1984, she and defendant attended a wedding reception in Bensenville. At that time, Brown was seven months pregnant. She stated that they both drank beer at the reception, and that defendant had consumed five or six beers. In the early morning hours of February 18, Brown and defendant returned to Chicago. At approximately 2:30 a.m., defendant was driving south on Central Avenue toward Belmont when their car was cut off by another car headed east on Belmont, forcing defendant to drive into oncoming traffic. The other car turned left onto Wellington, and defendant followed directly behind it. On Wellington, the other car stopped abruptly approximately four to five feet in front of defendant's car. The driver and a passenger got out and walked toward defendant. One of the men approached defendant with his hands up and yelled something to the effect of "What do you want?" and defendant stated, "Come on now, I got a pregnant woman in the car." Then Brown heard a gun go off. The occupants of the other car returned to their car and sped off. Brown saw a person lying in the street. Defendant got back into the car and followed the other car, then stopped at a Golden Nugget restaurant on Wellington. After a few minutes, defendant and Brown returned to the scene of the shooting and saw an ambulance and police cars. Defendant walked over to the officers at the scene and then returned to the car, telling Brown that the officers told him to "get the hell out of there and quit standing around."

Martin McCaffrey testified that on February 18, 1984, at 2:30 a.m. he, his brother Raymond and Donald Starzynski left Bullwinkles'

tavern at 5700 West Belmont in Starzynski's four-door Oldsmobile Delta 88. Martin was seated in the front passenger seat and Raymond was in the back seat. Starzynski drove east on Belmont to Central Avenue. At the corner of Belmont and Central, he made a right-hand turn and began to drive south on Central when his car was cut off by another car. Starzynski slammed on the brakes to avoid hitting defendant's car. At that point, defendant pulled his car over to the curb. Martin saw a man and a woman in the other car and thought that defendant had stopped because they were friends. When the three men realized that they did not know defendant or Brown, Starzynski proceeded south on Central.

Raymond then stated to the others that defendant's car was following closely behind them. Starzynski picked up the speed of his car and defendant drove into the lane of oncoming traffic. Martin thought defendant was trying to pass Starzynski's car. The two cars drove side by side for about a block and a half.

When Starzynski reached Wellington, he hit the brakes and turned east toward his house at 5328 West Wellington. At that point, defendant's car was in front of Starzynski's car. As Starzynski drove east on Wellington, Raymond noticed that defendant made a U-turn and started to follow them again. Starzynski proceeded at a normal rate of speed and stopped his car in front of his house. Defendant stopped his car right behind Starzynski's.

At that point, Raymond got out of the car from the rear, right passenger door. Martin yelled to Raymond not to walk in between the two cars because he was afraid defendant was going to try and crush Raymond between the cars. Raymond walked toward defendant with his empty hands up in the air. Raymond stopped at the driver's side of defendant's car. Martin noticed that defendant was out of the car. Martin saw defendant's arm extended straight out and saw defendant shoot Raymond. At the moment the gun went off, Starzynski hit the gas and sped off. Martin saw defendant standing in the street looking down, then he looked up in the direction of Starzynski's car.

Starzynski drove around the block to the alley behind his house. At that time, Martin saw defendant's car headed north on Lockwood Street. Martin ran to the street to help Raymond while Starzynski called an ambulance. Raymond was bleeding from his forehead and was unable to speak. After Raymond was transported to Northwest Hospital, Martin rode around with police looking for defendant's car, although Martin had not noted the license plate number.

In February 1989, Martin identified defendant in a lineup as the man who "looked like the guy" who shot Raymond, but stated that he

was not positive. Martin described the gun defendant used as a "snubnose," and identified a gun shown to him by police as similar in size, color and appearance to the gun used by defendant on February 18, 1984. On cross-examination, Martin testified that he viewed a lineup in March 1984 but did not identify anyone in the lineup as the shooter.

Donald Starzynski testified to the same essential facts as Martin, noting that he saw defendant get out of his car and "shoot Ray execution-style right in the head" from between one and four feet away, at arm's length. Starzynski admitted that he was unable to identify defendant in a lineup because he did not get a good look at his face on the night of the incident.

Next, Jack Sedlarik testified that on February 18, 1984, he lived at 5336 West Wellington. At 2:30 a.m. he was on his way home and saw two cars coming down the street at a fairly rapid rate of speed, one right behind the other. He saw one person get out of each car and approach the curb, one man with his hands raised, palms forward. Then all of a sudden, the man fell down. On cross-examination, Sedlarik stated that he did not know Raymond, Martin or Starzynski.

Shaku Teas, a Cook County medical examiner, testified that on February 19, 1984, she performed an autopsy on Raymond McCaffrey. She determined Raymond's cause of death to be a gunshot entry wound to the left side of his forehead.

Chicago police detective Richard Schak testified that at the time of defendant's arrest, defendant was carrying a Colt .38 revolver. Schak stated that after Martin identified defendant in a lineup, Martin and Starzynski identified defendant's Monte Carlo automobile as the car driven by defendant the night of the shooting. Sergeant James Gainer, a Chicago police department firearms examiner, testified that the bullet removed from Raymond's head was shot from defendant's Colt .38 revolver. At the close of the State's evidence, defense counsel's motion for directed verdict was denied.

John Boyce then testified on defendant's behalf that on February 18, 1984, at 2:30 a.m. he was sitting in a parked car on Wellington Street. At that time, he saw two cars speed down Wellington Street, stopping three houses from where he was located. He heard a loud noise that sounded like one of the cars had backfired. Then he saw a man running, and although he did not see where he ran to, he thought he entered one of the two cars. Both cars sped away. The police arrived, and Boyce saw a man lying in the street bleeding from the head. He attempted to administer first aid to Raymond by wrapping a towel around his head.

The jury found defendant guilty of murder, and following a hearing in aggravation and mitigation, the trial court sentenced defendant to 25 years of imprisonment. This timely appeal followed.

Defendant first contends that the prosecutor's reference to Carol Brown's statement, "what about murder?" improperly treated the statement as an expression of Brown's opinion that defendant had committed murder. In response, the State argues that the prosecutor properly quoted the statement as a rhetorical device in asking the jurors to return a guilty verdict for the offense of murder. We agree with the State.

Defendant objects to the following statement made by the prosecutor during rebuttal closing argument:

"[PROSECUTOR]: Based on the evidence, when you consider everything that was said, one would have to think of what Carol Brown said and that's 'How about murder?' and that's the verdict I'd ask you to return in this case."

A prosecutor is granted wide latitude in closing argument and the propriety of his comments are within the trial court's discretion. (*People v. Morrison* (1985), 137 Ill. App. 3d 171, 184, 484 N.E.2d 329.) It is well settled that the prosecution has the right to comment on the evidence that has been adduced at trial and make all legitimate inferences therefrom. (*People v. Batchelor* (1990), 202 Ill. App. 3d 316, 332, 559 N.E.2d 948.) Even improper prosecutorial comments generally do not warrant reversal unless they are so prejudicial as to constitute such a material factor in defendant's conviction that the jury likely would have reached a contrary verdict had the comments not been made. *People v. Townsend* (1985), 136 Ill. App. 3d 385, 394, 483 N.E.2d 340.

The cases relied upon by defendant are distinguishable and therefore unpersuasive. Defendant first relies upon *People v. Brown* (1990), 200 Ill. App. 3d 566, 558 N.E.2d 309. There, this court held that the trial court improperly allowed a State's witness to testify as to what the defendant meant by a remark. (*Brown*, 200 Ill. App. 3d at 588.) Defendant further relies upon *People v. Perry* (1986), 147 Ill. App. 3d 272, 498 N.E.2d 1167, wherein this court reversed a murder conviction because a State forensic expert testified to the ultimate issue of the case, thereby compromising the jury's fact-finding function. (*Perry*, 147 Ill. App. 3d at 275.) Finally, defendant contends that *People v. Davis* (1984), 130 Ill. App. 3d 41, 473 N.E.2d 387, supports his contention. There, the court held that admission of defendant's mother's testimony regarding an alleged apology she made to the victim for defendant's actions was error, because the only function of the

testimony was to raise a prejudicial inference that she believed defendant guilty of the crimes charged. *Davis*, 130 Ill. App. 3d at 53.

■ The facts in the present case are not comparable. Carol Brown did not testify to the ultimate issue of the case. Defendant concedes that Brown's testimony was elicited for the purpose of explaining the five-year delay in investigating the shooting of Raymond McCaffrey. Defendant did not object to Brown's testimony at trial, but on appeal, objects to the prosecutor's quoting of Brown's statement in his closing remarks. In context, the prosecutor's remarks were proper, as they were made at the end of a statement summarizing the evidence the jury had heard. The prosecutor did not argue that the jury should find the defendant guilty of murder because, in Brown's opinion, defendant was guilty of murder, but based upon the evidence presented at trial. It is proper for the prosecutor to denounce the activities of defendants and urge that justice be administered. (*Morrison*, 137 Ill. App. 3d at 184.) Moreover, the trial court instructed the jury that closing argument is not evidence. Thus, the prosecutor's comment was not improper.

Next, defendant contends that he was not proved guilty of murder beyond a reasonable doubt because the evidence established that defendant acted in self-defense and the prosecution failed to rebut that evidence. Although defendant concedes that it is not disputed that he "fired the single shot that caused Raymond McCaffrey's death," he argues that Raymond "advanced toward confrontation" when he got out of Starzynski's car and walked toward defendant's car, and that defendant's reaction was "guarded and defensive."

■ Self-defense is an affirmative defense, and unless the State's evidence raises the issue involving the alleged defense, the defendant bears the burden of presenting evidence sufficient to raise the issue. (*People v. Everette* (1990), 141 Ill. 2d 147, 157, 565 N.E.2d 1295; Ill. Rev. Stat. 1987, ch. 38, pars. 3—2, 7—14.) Self-defense is raised when a defendant presents some evidence of each of the following elements of the defense: (1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm is imminent; (4) the person threatened actually believes (a) that a danger exists, (b) the use of force is necessary to avert the danger, and (c) the kind and amount of force which he uses is necessary; and (5) the above beliefs are reasonable. Additionally, the use of deadly force is limited to those situations in which the threatened force will cause death or great bodily harm. (*People v. Guzman* (1990), 208 Ill. App. 3d 525, 531, 567 N.E.2d 500.) A determination on the issue of self-defense is particularly within the province of the trier of fact, and a reviewing court

will not disturb a decision regarding self-defense unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of guilt. *Guzman*, 208 Ill. App. 3d at 532.

■ In the present case, neither defendant's evidence nor the State's evidence raised the issue of self-defense. The record indicates that Raymond was unarmed when he approached defendant and that he did not threaten defendant with force. The record further shows that defendant used deadly force, shooting Raymond in the forehead from a distance of approximately four feet, while Raymond's arms were raised and his hands empty. The manner in which Raymond approached defendant could not have caused death or great bodily harm to defendant. Therefore, defendant has failed to show that he acted in self-defense and that he was not proved guilty of murder beyond a reasonable doubt.

For the aforementioned reasons, the judgment of the trial court is affirmed.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.